[Sac. No. 223.    Department Two.—June 25, 1897.]

ANTONIO KING, RESPONDENT, v. MANUEL J. LAMB, APPELLANT.

STREET IMPROVEMENT—RESOLUTION OF INTENTION—PUBLICATION—DESIGNATION OF NEWSPAPER.—It is not necessary that a municipal board of trustees should designate the newspaper in which a resolution of intention for street work should be published by a separate order. It is sufficient if the resolution of intention itself contains such designation.

ID.—RECITAL IN RESOLUTION.—A recital in the resolution of intention that a specified newspaper "is hereby designated as the newspaper . . . . in which notice of the adoption of this resolution shall be published for a period of two days," is a sufficient direction for the publication of the resolution. In construing such recital, the words "notice of the adoption of" may be rejected as surplusage, if the resolution itself be published.

ID.—POSTING OF RESOLUTION—NAMES OF TRUSTEES.—Neither the street improvement act (Stats. 1891, p. 196, sec. 3) nor the charter of the city of Sacramento (Stats. 1893, p. 550, sec. 15) require that the resolution of intention for street work, as posted, should contain the names of the trustees voting for or against it.

ID.—SUFFICIENCY OF SPECIFICATIONS.—The specifications as to the character and amount of the work to be done, and the place where the work was to be done, held, to be sufficiently definite and specific to confer jurisdiction on the board to order the doing of the work.

ID.—EVIDENCE.—In an action to enforce the lien of a street improvement, if all the statutory proceedings have been sufficient, the admission in evidence of a paper signed by the defendant, showing his willingness that the plaintiff should perform the work, is without prejudice.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial.    A. P. CATLIN, Judge.

The facts are stated in the opinion.

CXVII. CAL.—26

*White, Hughes & Seymour,* for Appellant.

*Martin Devine,* for Respondent.

HAYNES, C.—This is an action brought by the plaintiff to foreclose a lien for street work upon the north fifty-six feet of lot No. 4, in the block bounded by T and U and Second and Third streets, in the city of Sacramento, the property of the defendant. The plaintiff had findings and judgment for the sum of seventy dollars and seventy-four cents, with interest, and an attorney's fee of fifteen dollars. The defendant appeals from the judgment and from an order denying his motion for a new trial.

The main ground upon which defendant relies for a reversal of the judgment and order is that the board of trustees never acquired jurisdiction to order the improvement.

Three points are made in support of this contention:

1. "That the board of trustees did not designate the newspaper in which the resolution of intention should be published." That part of the resolution material to be noticed is as follows: "The daily *Bee* is hereby designated as the newspaper published and circulated in the city of Sacramento in which notice of the adoption of this resolution of intention shall be published for a period of two days, and the notice thereof for six days, as often as said newspaper shall be issued therein. Adopted March 19, 1894, by the following vote: Ayes— Wachhorst, Kent, Davis, Brag, Towser, Devine, Leonard, Lawton, Hennish. Noes—None. W. B. Lawton, President of the Board of Trustees; O. S. Flint, Clerk of the Board of Trustees of Sacramento City."

No order or resolution was passed by the board of trustees relative to the publication to be made of the resolution of intention other than appears in the resolution itself, and it is contended that an order to publish a "notice" of the adoption of a resolution cannot be construed as providing for the publication of the reso-

lution, and that the requirement of the statute in this particular is jurisdictional.

No question is made but that the resolution, as adopted, was published in accordance with the requirements of the statute, and we think it was not at all material that a separate order was not made designating the paper in which the publication should be made.

It is contended, however, that the order here was not for the publication of the resolution of intention, but for the publication "of a notice of the adoption" of such resolution. If the words "notice of the adoption of" had been omitted, the direction would have been perfectly clear that the resolution should be published for a period of two days, and the notice thereof for six days; but the words above quoted may be regarded as mere surplusage which cannot mislead, and certainly did not mislead, since the resolution itself was published as required by the order.

2. It is further contended that the resolution of intention was not posted. It is conceded that the resolution, as posted, contained the entire body of the resolution, but omitted the vote by which it was passed and the name of the president of the board, but it was signed "O. S. Flint, Clerk of the Board of Trustees, Sacramento City."

Upon this point the statute requires: "Before ordering any work done or improvement made, which is authorized by section 2 of this act, the city council shall pass a resolution of intention so to do, and describing the work, which shall be posted conspicuously for two days on or near the chamber door of the city council, and published by two insertions in one or more daily, semi-weekly, or weekly newspapers, published and circulated in said city and designated by said council for that purpose."

We are not referred by counsel to any provision requiring the vote by which an ordinance or resolution is passed to be published in connection with the publica-

tion of the ordinance or resolution. Nor do we find any such provision either in the statute under which the street improvement in question was made (Stats. 1891, sec. 3, p. 196), nor in the charter of the city of Sacramento. Section 15 of said charter (Stats. 1893, p. 550) provides: "No proposed ordinance shall be adopted except by vote taken by yeas and nays, and the names of the members voting for and against the same shall be entered in the minutes."

By section 18 it is provided that "no ordinance passed by the board shall take effect until ten days after its passage and approval, unless otherwise provided in the enactment." The publication of ordinances is not made essential to their validity. The street law, not having provided for the publication, in connection with the resolution or ordinance, of the names of those voting thereon, such publication is unnecessary unless required by the charter of the city, which, as we have seen, requires only that the vote be recorded in the minutes. We think the posting of the resolution, without attaching the names of those voting for or against it, was a sufficient compliance with the statute.

3. It is further contended that the board of trustees did not determine the character and amount of the work to be done, and the place where the work was to be done, and for that reason did not acquire jurisdiction to do the work. Under this head appellant specifies that the board of trustees did not determine how many crosswalks should be laid, or the length of the stakes or posts to which the curbing was to be nailed, nor the number of drainage culverts and the places where the same should be put.

In relation to the crosswalks it is said that the specications state that "Wherever old crosswalks exist and are taken up they shall become the property of the superintendent of streets," and that this language is capable of the construction that some of the existing crosswalks were to be taken up and others not; but that the board

left the determination of that question to the discretion of the city surveyor or the superintendent of streets. But this contention we think cannot be sustained.

The specifications clearly specify how the crosswalks and drainage culverts are to be constructed, the size and quality of the materials to be used, so that the precise amount of material used in each is capable of exact ascertainment, as well as the number of each. For example: The crosswalks are to be made of first-class Oregon pine, 2x12 and three feet wide, and well spiked to the sills. The sills are to be 4x6 redwood, put down at intervals of four feet. The culverts are to be made of the best quality three-inch redwood, and made 12x18 inches inside measurement, with cross-sills at intervals of six feet of 2x6 redwood, and also specifies how the cover is to be made, and of what material, and how put on, and, in connection with these specifications, there is an "approximate estimate" in which it is specified that the quantity of lumber to be used in the crosswalks is eight thousand five hundred and ninety-two feet, board measure, and in the culverts fifteen hundred and forty-four feet, and it is not claimed that more than these amounts of lumber were used in the construction of the work for which they were designated. Besides, we think it should be reasonably understood that crosswalks and culverts are put in only at street crossings, and that it required no special designation of the place where they were to be laid.

As to the curbing stakes, the specifications provide that "the curbing shall be securely nailed at each stake or post, such stake to be of first-class 3x4 redwood, three feet long, or longer if required, and to be not over four feet apart."

We think this sufficiently definite. It might be in a particular locality, owing to the nature of the ground, that a stake somewhat longer should be required, but it does not appear that longer stakes were required or were used. Even if it were so, we should not feel in-

clined to hold that the board had not jurisdiction to order the work because of so trifling an uncertainty.

The case of *Bolton* v. *Gilleran*, 105 Cal. 244, 45 Am. St. Rep. 33, cited by appellant in support of these contentions, involved very different facts from those in the case at bar. In that case the superintendent of streets was authorized to use a discretion which increased the cost of different portions of the work from twenty-five to fifty per cent, and that discretion was not controlled by any fixed rules, but its exercise was intrusted solely to the judgment or volition of the officer; and it is quite true, as there stated, that "the legislative department of the city has no power to delegate to any other officer or body the authority to determine upon the necessity of making such improvement, or the character or extent of any improvement which it may itself direct to be made."

Appellant also contends that the court erred in admitting in evidence a paper, of which the following is a copy:

"To the Honorable Board of Supervisors: We, the undersigned property owners, having property fronting on T street, from Third street to Eighth street, agree that the contract for grading said street be given to Antonio King, he being the lowest bidder"; and in permitting proof that the defendant signed said paper. We suppose this testimony was admitted as tending to show that the defendant was willing and desired that the plaintiff should perform the work in question under the contract made with him pursuant to the proceedings had for that purpose; but whether the court erred in admitting the evidence need not be decided, since it is apparent that if the proceedings for the improvement of the street under which the work was done were sufficient, in face of the objections made thereto by the defendant, and which have already been considered, he could not be injured by the admission of this evidence.

We advise that the judgment and order appealed from be affirmed.

BELCHER, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

HENSHAW, J., TEMPLE, J., McFARLAND, J.