BROWN v. DRAIN, Street Superintendent, et al.

(Circuit Court, S. D. California. December 30, 1901.)

MUNICIPAL CORPORATIONS—ASSESSMENT FOR STREET IMPROVEMENTS—CONSTITU
TIONALITY OF PROCEEDINGS.

The California street work act of March 18, 1885 (St. 1885, p. 147), as amended in 1889 (St. 1889, p. 157), in 1891 (St. 1891, p. 461), and in 1893 (St. 1893, p. 89), which, as determined by the supreme court of the state, governs proceedings for the making of street improvements in the

city of Los Angeles, notwithstanding the conflicting provisions of its charter, requires the city council, before ordering any work done, to pass and have published a resolution of intention. It then gives the owners of property affected the right to file remonstrances or objections, which are to be considered by the council, and they are given the further right to file remonstrances against any subsequent action taken in the matter by which they may deem themselves aggrieved at any time before the issuance of the assessment roll. It is then provided that, after the assessment has been made and the warrant issued, any person interested may appeal to the council, which is given power to "confirm, amend, set aside, alter, modify or correct" the assessment made by the superintendent of streets, and to require the issuance of a new warrant in its discretion. The council is also given power to direct that the whole or any part of the cost of an improvement be paid out of the treasury of the municipality, and the exercise of such power is not limited to any particular stage of the proceedings. *Held*, that such provisions afford to a property owner an ample remedy for the correction of an erroneous or excessive assessment, and that, having failed to appeal from the assessment made, he cannot invoke the aid of a court of equity to set the same aside on the ground that it exceeded the benefits accruing to his property, and is in violation of his constitutional rights.

In Equity. On application for preliminary injunction and demurrer to bill.

Chas. L. Batcheller, for complainant. .

W. F. Haas, F. G. Finlayson, W. Rodman, L. R. Garrett, and W. B. Mathews, for defendants.

ROSS, Circuit Judge. The time now at the disposal of the court does not admit of an extended opinion in this case, nor, indeed, anything more than a mere outline of the grounds upon which its judgment rests. The suit is one in equity by a citizen of the state of Ohio against the street superintendent of the city of Los Angeles, its treasurer, a contractor who did certain street work complained of, and his assignee. The object of the suit is to obtain a decree quieting the complainant's title to certain lands against certain street assessments levied to pay for the work complained of, and also to restrain the treasurer of the city from issuing certain bonds to represent the assessments. The work in question was the improvement of Stanley avenue, in Los Angeles city, fronting on which were the two parcels of the complainant's land, one known as block 1 of the South Park tract, of the alleged value of more than $5,000, the assessment on which for the improvements in question was the sum of $2,633.88, and the other as block 2 of the same tract, of the alleged value of more than $10,000, upon which the assessment was $2,559.93. The proceedings in question were had and taken under the provisions of an act of the legislature of California approved March 18, 1885, commonly known as the "Vrooman Act," and entitled "An act to provide for work upon streets, lanes, alleys, courts, places and sidewalks, and for the construction of sewers within municipalities" (St. 1885, p. 147), as amended in 1889 (St. 1889, p. 157), in 1891 (St. 1891, p. 461), and in 1893 (St. 1893, p. 89), under which law, unless otherwise directed by the city council, assessments for such work were required to be made in accordance with what is known as the "front-foot rule." The council not hav-

·ing otherwise ordered, that plan obtained in this instance; and the original bill in the case proceeded upon the theory that that rule had been unqualifiedly condemned as contrary to the constitution of the United States in the case of Village of Norwood v. Baker, ·172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. But since the decisions of the supreme court in French v. Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879, Wight v. Davidson, 181 U. S. 371, 21 Sup. Ct. 616, 45 L. Ed. 900, and similar decisions decided at the same time and reported in the same volume, it has been conceded by complainant's counsel that assessments for street improvements made in accordance with the front-foot rule are not necessarily invalid; but he still insists that the assessments here in question are void on various grounds, among which is the alleged fact set up in an amended bill, which he asks leave to file, to the effect that the work complained of did not, nor will it, benefit his block 1 to an amount equal to its assessment of $2,633.88, nor to any amount exceeding the sum of $1,000, nor did it benefit nor will it benefit his block 2 to an amount equal to its assessment of $2,559.93, nor to any amount exceeding $1,000, which two amounts, of $1,000 each, it is alleged in the amended bill sought to be filed, the complainant offered to pay the contractor and his assignee, "expressly denying, however, and expressly without admitting, the validity of said assessment against plaintiff's said property, which tender and offer was not accepted by said defendants, or either of them, but was in fact refused by said defendants, and both of them; but nevertheless this plaintiff has ever since been ready and willing, and now is ready and willing, to pay the same to said defendants, or either of them." It is insisted on the part of the complainant that to enforce an assessment against his property in an amount in excess· of what he alleges, and claims the right to prove, was the benefit derived by the improvement,—especially in view of the allegation that the city council made no inquiry into the question of benefits,—entitles him to a decree annulling the proceedings, as being contrary to the provisions of the constitution of the United States. It is further contended on the part of the complainant that the proceedings in question were improperly had under the provisions of the so-called Vrooman act and its amendments, and should have been conducted pursuant to the provisions of the city charter adopted January 31, 1889 (St. 1889, p. 456). It is also contended that, even if the proceedings in question were governed by the Vrooman act and its amendments, still there were such defects in them as entitle the complainant to the decree sought.

In the late case of Banaz v. Smith, 65 Pac. 309, the supreme court of California held that the act of March 18, 1885, being a general law, was unaffected by those provisions of the Los Angeles city charter of 1889 relating to improvement of streets which conflicted therewith, since the constitution of the state at that time authorized the formation of such municipal charters as would be consistent with the constitution and with the laws of the state, and that where the provisions of a city charter were in conflict with a general law, and therefore void when adopted, the subsequent amendment in

1896 to section 6, art. 11, of the constitution of the state, which so changed it that the charter provisions would have been harmonious therewith, did not operate to give life to such provisions. It must be here held, therefore, that the act of March 18, 1885, as amended, is the law governing the proceedings called in question by the bill in the present case. The remedy of one who considers himself unfairly assessed is to apply for redress to the statutory tribunal, if one is provided with the power to review. In all collateral proceedings the benefits assessed are conclusively presumed to be received, and the assessment is not open to revisal or review. Cooley, Tax'n (2d Ed.) p. 662.

Turning to the Vrooman act and its amendments, it is seen that the city council is by section 2 empowered to order done work of the character of that here involved, and by section 3 is required, before making the order, to pass a resolution of intention so to do, describing the work, which resolution shall be published and posted in the manner prescribed in the act. The street superintendent is then required to publish and post in the prescribed way notice of the work, stating therein the fact of the passage of the resolution, its date, and, briefly, the work or improvement proposed, and referring to the resolution for further particulars. There is then given by the statute to the owners of a majority of the frontage of the property fronting on the proposed work, where the same is for one block or more, the right to make written objection thereto within ten days after the expiration of the time of the publication and posting of the notice, which objection is required to be delivered to the clerk of the council, who is required to indorse thereon the date of its receipt by him, which objection so delivered and indorsed is declared to be a bar for six months to any further proceedings in relation to the doing of the work, unless the owners of the majority of the frontage shall meanwhile petition for the same to be done. The owners of lots or lands liable to the assessment, who, after the first publication of the resolution of intention to do the work, may feel aggrieved, or who may have objections to any of the subsequent proceedings of the council in relation to the performance of the work mentioned in the notice of intention, may at any time before the issuance of the assessment roll file with the clerk a petition of remonstrance, wherein they shall state in what respect they may feel aggrieved, or the proceedings to which they object, which petition of remonstrance is by the statute required to be passed upon by the council, and its decision thereon is declared to be final and conclusive. Certain exceptions to the foregoing provisions are stated, but are not necessary to be mentioned, and it is then provided that:

"At the expiration of ten days after the expiration of the time of said publication of said street superintendent and at the expiration of fifteen days after the advertising and posting, as aforesaid, of any resolution of intention, if no written objection to work therein described has been delivered, as aforesaid, by the owners of a majority of the property liable to be assessed for the expense of said work or improvement, or if said protest be disallowed, the city council shall be deemed to have acquired jurisdiction to order any of the work to be done or improvement to be made which is authorized by

this act; which order, when made, shall be published for two days, the same as provided for the publication of the resolution of intention. Before passing any resolution for the construction of said improvements, plans and specifications and careful estimates of the costs and expenses thereof shall be furnished to said city council, if required by it, by the city engineer of said city. * * * Whenever the contemplated work of improvement, in the opinion of the city council, is of more than local or ordinary public benefit, or whenever, according to estimate to be furnished by the city engineer, the total estimated costs and expenses thereof would exceed one-half the total assessed value of the lots and lands assessed, if assessed upon the lots or land fronting upon said proposed work or improvement, according to the valuation fixed by the last assessment roll whereon it was assessed for taxes for municipal purposes, and allowing a reasonable depth from such frontage for lots or lands assessed in bulk, the city council may make the expense of such work or improvement chargeable upon a district, which the said city council shall in its resolution of intention declare to be the district benefited by said work or improvement, and to be assessed to pay the costs and expenses thereof."

Provision is then made for the making, hearing, and determination of objections in that event on the part of those included within such designated district. In the present instance no such district was established, and those provisions of the statute are therefore inapplicable. Sealed proposals or bids for doing the work ordered are then provided for, upon notice to be given as prescribed, referring to the specifications on file, with the power in the council to reject any and all bids, and also providing that, in case of the awarding of such contract, notice thereof shall be posted and published as designated within 10 days of the first posting and publication of which notice of award the owners of three-fourths of the frontage upon the street whereon the work is to be done may elect to do the work themselves at the price at which it shall have been awarded, in default of which, or if, after undertaking to do the work, such owners shall fail to commence it within 15 days after the first posting and publication of the award, and to prosecute the same with diligence to completion, it is made the duty of the superintendent of streets to enter into a contract with the original bidder to whom the contract was awarded, and at the prices specified in his bid. By section 7 of the act it is, among other things, provided that:

"The expenses incurred for any work authorized by this act (which expense shall not include the cost of any work done in such portions of any street as is required by law to be kept in order or repair by any person or company having railroad tracks thereon, nor include work which shall have been declared in the resolution of intention to be assessed on a district benefited) shall be assessed upon the lots and lands fronting thereon, except as hereinafter specifically provided; each lot or portion of a lot being separately assessed, in proportion to the frontage, at a rate per front foot sufficient to cover the total expense of the work."

By section 8 it is provided that:

"After the contractor of any street work has fulfilled his contract to the satisfaction of the street superintendent of said city, or city council on appeal, the street superintendent shall make an assessment to cover the sum due for the work performed and specified in said contract (including any incidental expenses) in conformity with the provisions of the preceding section according to the character of the work done; or, if any direction and decision be given by said council on appeal, then in conformity with such direction and decision, which assessment shall briefly refer to the contract,

the work contracted for and performed, and shall show the amount to be paid therefor, together with any incidental expenses, the rate per front foot assessed, if the assessment be made per front foot, the amount of each assessment, the name of the owner of each lot, or portion of a lot (if known to the superintendent); if unknown, the word 'unknown' shall be written opposite the number of the lot, and the amount assessed thereon, the number of each lot or portion or portions of a lot assessed, and shall have attached thereto a diagram exhibiting each street or street crossing, lane, alley, place, or court on which any work has been done, and showing the relative location of each district, lot, or portion of lot to the work done, numbered to correspond with the numbers in the assessments, and showing the number of feet fronting, or number of lots assessed, for said work contracted for and performed."

Section 11 of the act is as follows:

"The owners, whether named in the assessment or not, the contractor, or his assigns, and all other persons directly interested in any work provided for in this act, or in the assessment, feeling aggrieved by any act or determination of the superintendent of streets in relation thereto, or who claim that the work has not been performed according to the contract in a good and substantial manner, or having or making any objection to the correctness or legality of the assessment or other act, determination, or proceedings of the superintendent of streets, shall, within thirty days after the date of the warrant, appeal to the city council, as provided in this section, by briefly stating their objections in writing, and filing the same with the clerk of said city council. Notice of the time and place of the hearing, briefly referring to the work contracted to be done, or other subject of appeal, and to the acts, determinations, or proceedings objected to or complained of, shall be published for five days. Upon such appeal, the said city council may remedy and correct any error or informality in the proceedings, and revise and correct any of the acts or determinations of the superintendent of streets relative to said work; may confirm, amend, set aside, alter, modify, or correct the assessment in such manner as to them shall seem just, and require the work to be completed according to the directions of the city council; and may instruct and direct the superintendent of streets to correct the warrant, assessment, or diagram in any particular, or to make and issue a new warrant, assessment, and diagram, to conform to the decisions of said city council in relation thereto, at their option. All the decisions and determinations of said city council, upon notice and hearing as aforesaid, shall be final and conclusive upon all persons entitled to appeal under the provisions of this section, as to all errors, informalities, and irregularities which said city council might have remedied and avoided; and no assessment shall be held invalid, except upon appeal to the city council, as provided in this section, for any error, informality, or other defect in any of the proceedings prior to the assessment, or in the assessment itself, where notice of the intention of the city council to order the work to be done, for which the assessment is made, has been actually published in any designated newspaper of said city for the length of time prescribed by law, before the passage of the resolution ordering the work to be done."

Section 9 declares that to the assessments made by the superintendent of streets shall be attached a warrant in a prescribed form, which shall be signed by the superintendent and countersigned by the mayor of the city, and that such warrant, assessment, and diagram, together with the certificate of the city engineer, shall be recorded in the office of the superintendent of streets, and that when so recorded the several amounts assessed shall be a lien upon the lands, lots, or portions of lots assessed, respectively, for the period of two years from the date of the recording, unless sooner discharged, and that from and after the date of such recordation all persons mentioned in section 11 shall be deemed to have notice of

the contents of the record thereof. · Section 9 then declares that after the warrant, assessment, diagram, and certificate are recorded, the same shall be delivered to the contractor, or his agents or assigns, on demand, but not until after the payment to the superin- .tendent of streets of the incidental expenses not previously paid by the contractor, or his assigns, and that by virtue of the warrant the contractor, or his agent or assigns, shall be authorized to demand and receive the amount of the several assessments made to cover the sum due for the work specified in the contract and assessment. By section 12 it is provided that:

"At any time after the period of thirty-five days from the day of the date of the warrants, as herein provided; or if any appeal is taken to the city ..council, as is provided in section eleven of this act, at any time after five days from the decision of said council, or after the return of the warrant or assessment, after the same may have been corrected, altered, or modified, as provided in said section eleven (but not less than thirty-five days from the date of the work), the contractor or his assignee may sue, in his own name, the owner of the land, lots, or portions of lots, assessed on the day of the date of the recording of the warrant, assessment, and diagram, or any day thereafter during the continuance of the lien of said assessment, and recover the amount of any assessment remaining unpaid, with interest thereon at the rate of ten per cent. per annum until paid," with various other provisions in respect to such suits not necessary to be mentioned.

By an act of the state approved February 27, 1893, entitled "An act to provide a system of street improvement bonds to represent certain assessments for the cost of street work and improvement within municipalities, and also for the payment of such bonds" (St. 1893, p. 33), it was provided, in section 2, that:

"Whenever the city council of any municipality in this state shall find, upon estimates of the city engineer, that the cost of any proposed work or improvement authorized by said street work act will be greater than one dollar per front foot along each line of the street so proposed to be improved, including the cost of intersection work assessable upon said frontage, it shall have the power, in its discretion, to determine that serial bonds shall be issued to represent the cost of said work or improvement in the manner and form hereinafter provided. Said serial bonds shall extend over a period not to exceed ten years from their date, and an even annual proportion of the principal sum thereof shall be payable, by coupon, on the second day of January every year after their date, until the whole is paid, and the interest shall be payable semi-annually, by coupon, on the second days of January and July, respectively, of each year, at the rate of not to exceed ten per cent. per annum on all sums unpaid, until the whole of said principal and interest are paid. Said bonds and interest thereon shall be paid at the office of the city treasurer of said municipality, who shall keep a fund designated by the name of said bonds, into which he shall receive all sums paid him for the principal of said bonds and the interest thereon, and from which he shall disburse such sums upon the presentation of said coupons; and under no circumstances shall said bonds or the interest thereon be paid out of any other fund. Said city treasurer shall keep a register in his office, which shall show the series, number. date, amount, rate of interest, payee, and indorsees of each bond, and the number and amount of each coupon of principal or interest paid by him, and shall cancel and file each coupon so paid."

.. By the act last mentioned the form of the bond was prescribed, and it was also declared that, when the council shall determine that bonds .shall .be issued .to represent the expenses of any· proposed ·street work or improvement, it shall so declare in the resolution of

intention to do the work, and shall specify the rate of interest which the bonds shall bear, and that a like description of the bonds shall be inserted in the resolution ordering the work, in the resolution of award of the contract, and in all notices of the proceedings required by the act to be posted or published, and also that a notice that a bond will issue to represent each assessment of $50 or more remaining unpaid for 30 days after the date of the warrant, or 5 days after the decision of the council upon an appeal, and describing the bonds, shall be included in the warrant provided for in section 9 of the street work act. By section 4 of the act of February 27, 1893, it is provided that after the expiration of 30 days from the date of the warrant, or, if an appeal be taken to the city council as provided in section 11 of the street work act, then 5 days after the final decision of the council, and after the street superintendent shall have recorded the return as provided in section 10 of that act, he shall make and certify to the city treasurer a complete list of all assessments unpaid which amount to $50 or over upon any assessment or diagram number, and that the treasurer shall thereupon make out, sign, and issue to the contractor, or his assigns, payee of the warrant and assessment, a separate bond representing upon each lot or parcel of land upon the list the total amount of assessments against the same as thereon shown. By section 4 of the act of February 27, 1893, it is also provided that if any person, or his authorized agent, shall, at any time before the issuance of the bond for the assessment upon his lot or parcel of land, present to the city treasurer his affidavit, made before a competent officer, that he is the owner of a lot or parcel of land in the list, accompanied by the certificate of a searcher of records that he is such owner of record, and with such affidavit and certificate such person notifies the treasurer, in writing, that he desires no bond to be issued for the assessment upon his lot or parcel of land, then no such bond shall be issued therefor, and the payee of the warrant, or his assigns, shall retain his right for enforcing collection as if his lot or parcel of land had not been so listed by the street superintendent.

In respect to taxes and assessments the rule is that a law authorizing the imposition of a tax or assessment upon property according to its value, or to benefits received, does not infringe that provision of the fourteenth amendment to the constitution of the United States which declares that no state shall deprive any person of property without due process of law, if the owner has an opportunity to question the validity or the amount of it either before that amount is determined, or in subsequent proceedings for its collection. Winona & St. P. Land Co. v. Minnesota, 159 U. S. 526, 537, 16 Sup. Ct. 83, 40 L. Ed. 247, and cases there cited. By the amendment to the bill sought to be filed it is alleged, in effect, that the work complained of did not, nor will it, benefit either of the complainant's blocks in an amount exceeding $1,000, whereas the assessment on one was $2,633.88, and on the other $2,559.93. If that be so, the complainant was provided by the statute in question an opportunity to show the fact to the city council, which was thereby empowered to correct that or any other grievance of the complainant found to exist; for

by section 3 of the act, as amended, every owner of a lot or tract of land liable to be assessed for the improvement, who, after the first publication of the resolution of intention to do the work, shall feel aggrieved, or who should have objections to any of the subsequent proceedings of the council in relation to the performance of the work mentioned in the notice of intention, was authorized to file with the clerk a petition of remonstrance, wherein he was required to state in what respect he should feel aggrieved, or the proceedings to which he objected. Such petition was authorized to be filed at any time after the publication of the notice of intention to do the work, and before the issuance of the assessment; and the council was by the statute required to pass upon the remonstrance, and its decision in respect to the matter was thereby made final and conclusive. The power thus conferred by the statute upon the council included not only the power to correct any and every error committed as against the complaining lot or land owner, but the power to stop and abandon the proceedings, if such action should be deemed necessary for the proper protection of the rights of the complaining party. In Warren v. Chandos, 115 Cal. 382, 387, 47 Pac. 132, 134, the supreme court of the state, in speaking of a street law of the city of San Francisco, said:

"The board of supervisors is the legislative body of the city, and is vested with a supervisory power over all improvements of streets and contracts therefor; and, in the exercise of its legislative discretion and consideration for the public welfare, it may at any time rescind a previous order for the improvement of a street, or order the street to be vacated, or its grade or width to be changed. The fact that a contract for the improvement of the street had been entered into would not deprive it of this power. The contractor might have a right of action against the city for whatever damage he should sustain from being in this way prevented from carrying out his contract, as in the case of any other breach of contract; but, after the contract had been thereby made of no effect, he would not have the right to proceed with its performance, and make the expense a charge upon the adjacent lands."

Moreover, by section 26 of the act of 1885, as amended by that of 1889, it is provided that:

"The city council may in its discretion order that the whole or any part of the cost and expenses of any of the work mentioned in this act be paid out of the treasury of the municipality from such fund as the council may designate. Whenever a part of such costs and expenses is so ordered to be paid, the superintendent of streets, in making up the assessment heretofore provided for such cost and expenses, shall first deduct from the whole cost and expenses such part thereof as has been so ordered to be paid out of the municipal treasury, and shall assess the remainder of said costs and expenses proportionately upon the lots, parts of lots, and lands fronting on the streets where said work was done, or liable to be assessed for such work, and in the manner heretofore provided."

No limitation is prescribed in respect to the stage of the proceedings at which this power may be exercised, and therefore no reason is perceived why it may not be exercised in behalf of any owner making any objection to the correctness or legality of the assessment by appeal to the city council, as provided in section 11 of the act, upon which appeal the council is given power to "remedy and correct any error or informality in the proceedings, and revise and correct any of

the acts or determinations of the superintendent of streets relative to said work; may confirm, amend, set aside, alter, modify, or correct the assessment in such manner as to them shall seem just, and require the work to be completed according to the directions of the city council; and may instruct and direct the superintendent of streets to correct the warrant, assessment, or diagram in any particular, or to make and issue a new warrant, assessment, and diagram, to conform to the decisions of said city council in relation thereto, at their option"; the statute proceeding to declare, in section 11, that:

"All the decisions and determinations of said city council, upon notice and hearing as aforesaid, shall be final and conclusive upon all persons entitled to appeal under the provisions of this section, as to all errors, informalities, and irregularities which said city council might have remedied and avoided; and no assessment shall be held invalid, except upon appeal to the city council, as provided in this section, for any error, informality, or other defect in any of the proceedings prior to the assessment, or in the assessment itself; where notice of the intention of the city council to order the work to be done, for which the assessment is made, has been actually published in any designated newspaper of said city for the length of time prescribed by law, before the passage of the resolution ordering the work to be done."

The contention on the part of the complainant that the proceedings themselves so far departed from the requirements of the Vrooman act and its amendments as to render them invalid is, in my opinion, answered by the cases of Whiting v. Townsend, 57 Cal. 515; Harney v. Heller, 47 Cal. 15; Williams v. Bergin, 116 Cal. 56, 47 Pac. 877; Edwards v. Berlin, 123 Cal. 544, 56 Pac. 432; King v. Lamb, 117 Cal. 401, 49 Pac. 561; Bolton v. Gilleran, 105 Cal. 244, 38 Pac. 881, 45 Am. St. Rep. 33; Gray v. Lucas, 115 Cal. 434, 47 Pac. 354.

It seems to me that the statute under which the proceedings in question were taken afforded the complainant ample opportunity for the correction of any error or injustice done him in the matter of the assessment, by seasonable application to the city council, to which he should have resorted, and, that being so, that a court of equity should afford him no relief. Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; Lent v. Tillson, 72 Cal. 404, 14 Pac. 71; Davies v. City of Los Angeles, 86 Cal. 37, 24 Pac. 771.

I cannot now do more than indicate the reasons for my conclusions, although the elaborate arguments of the learned counsel for the respective parties have been carefully considered, and would be treated of at length, if I had the time.

Orders will be entered (1) denying the application of the complainant to file the amendments to the bill; (2) denying the injunction asked for; (3) dissolving the temporary restraining order; (4) sustaining the demurrer and dismissing the bill at complainant's cost.