[L. A. No. 1153. In Bank.—April 4, 1904.]

## A. C. DUNCAN and MAGGIE A. DUNCAN, Appellants, v. ADOLPH RAMISH et al., Respondents.

APPEAL—ORDER DENYING NEW TRIAL—INEFFECTUAL APPEAL FROM JUDGMENT—REVIEW.—Where an appeal from the judgment is ineffectual because taken after the time for appeal therefrom has expired, it cannot be considered; and upon an appeal from an order denying a new trial, the sufficiency of the findings to support the judgment cannot be reviewed.

ID.—INSUFFICIENT ARGUMENT—SPECIFICATIONS OF INSUFFICIENCY OF EVIDENCE—WAIVER OF ERROR.—Where the argument of the appellants upon certain specifications of the insufficiency of the evidence to support the findings is a mere skeleton statement of references to the transcript, and there is no reply to the respondents' arguments of the sufficiency of the evidence on those specifications, any error in relation thereto will be treated as waived.

STREET ASSESSMENT—SALE UNDER BONDS—EXCESS OF COSTS OVER BENEFITS—ACTION TO ENJOIN DEED—COLLATERAL ATTACK.—In an action in equity to enjoin a deed under a sale of land by a city treasurer under bonds issued upon an assessment for the payment of the expenses of improving certain streets in the city under the provisions of the Street Improvement Law, the validity of the assessment cannot be collaterally attacked by evidence that the part of the costs of the improvement apportioned and assessed to plaintiffs' lots exceeded the benefits thereto arising from the improvement.

ID.—ABSENCE OF BENEFIT—JUDICIAL QUESTION—LEGISLATIVE DECISION. —The absence of benefit to the lot-owner cannot be a judicial question, unless the court can plainly see that there could be no benefit, and it is so clear that it does not admit of dispute by evidence; otherwise, the legislative decision is conclusive.

ID.—JURISDICTION OF CITY COUNCIL—FINALITY OF DETERMINATION.— Where the property-owner has an opportunity given him, under the prescribed proceedings, to appear and contest the question of benefits before the city council, as the local legislative body, by a proper remonstrance against the proceeding, the determination of that body on the subject of benefits is final, and if he fails to do so, he thereby admits the finality of its determination.

ID.—PROCEEDINGS FOR CHANGE OF GRADE—FAILURE TO CLAIM DAMAGES BEFORE COUNCIL.—Under proceedings for the change of grade, ante-dating a street improvement, any abutting owner feeling aggrieved had the right to claim any damages resulting therefrom before the council, and upon his failure to do so, he must be held to have waived any right to object to the change of grade on the ground of damages, and he cannot object to an assessment for the cost of grading and curbing to the changed grade on that ground.

ID.—CONSTITUTIONAL RIGHT TO DAMAGES—FAILURE TO ENJOIN WORK— RIGHT OF ACTION—ASSESSMENT NOT AFFECTED.—The right to damages by reason of a change of grade of a street arises solely under the constitution. If the owner desires to preserve his right to antecedent payment, he must sue to enjoin the work; and if he fails to do so before the street is improved to the changed grade, he is remitted to his right of action against the city for damages, which is an independent right, and cannot affect the validity of an assessment to pay the expenses of grading and improving the public street.

ID.—AGREEMENT BETWEEN CONTRACTORS AND PROPERTY-OWNERS—INJURY TO PLAINTIFFS NOT SHOWN.—The assessment to the plaintiffs' lots was not rendered void by an agreement between the contractors and certain property-owners, who waived their right to elect to take the contract, in consideration of which the contractors agreed to allow the property-owners signing the agreement a reduction of twenty-five per cent upon their assessments, where injury resulting thereby to the appellants is not shown, but it is manifest from the averments made that appellants could not have participated in any profits if the contract had been let to three fourths of the property-owners at the contract price, and that the assessment to plaintiffs' lots must have been the same if the contract had been so let.

ID.—FRAUD WITHOUT INJURY NOT ACTIONABLE.—It is a well-settled principle that fraud without injury confers no right of action; and this principle is applicable to a fraudulent agreement between a

contractor and other property-owners by which the rights of the plaintiffs are not shown to be injuriously affected.

ID.—FINDING AS TO OWNERSHIP.—A finding that the plaintiffs are the owners of the lots assessed, except so far as their title has been divested by reason of the sale, which the complaint attacks, which finding is in accordance with the pleadings and stipulation of the parties, is unobjectionable.

ID.—PROCEEDINGS FOR CHANGE OF GRADE IN LOS ANGELES PRIOR TO CONSTITUTIONAL AMENDMENT.—Proceedings to declare a change of grade in the city of Los Angeles prior to the passage of the constitutional amendment of 1896, making the charter paramount in municipal affairs, were properly had under the general law, and not under the city charter.

ID.—PROCEEDINGS FOR IMPROVEMENT OF STREET—CHANGE OF CONSTITUTION—STREET LAW—CITY CHARTER.—The Street Improvement Act having been in force when the charter of the city of Los Angeles was adopted, the constitutional amendment of 1896 had no effect upon it, and proceedings for the improvements of streets in that city are still properly had under that act, notwithstanding the provisions of the city charter.

ID.—ASSESSMENT DISTRICT—FAILURE TO INCLUDE PROPERTY ON STREETS IMPROVED—JURISDICTION OF COUNCIL.—The council having the power under the statute to declare the work of more than ordinary public benefit, and to make the assessment upon a district plan, and the property-owners being given the right to object to its boundaries, and to a notice and hearing thereupon, the property-owner failing so to object is concluded by the boundaries fixed, and cannot afterwards object that they did not include all the property fronting on the streets improved.

ID.—PROPERTY AT RIGHT ANGLES TO STREET LINE.—Property at the end of a street, and at right angles to the street line, does not front on the street in the strict meaning of that term, and may be properly omitted from a district including such street.

ID.—CERTIFICATE OF CITY ENGINEER.—The only certificate of the city engineer necessary for the purposes of assessment, assuming that one is necessary, would be a certificate giving to the street superintendent the facts necessary to enable him to make the assessment according to law. Where the work in the district was let by the lineal foot, and the certificate of the engineer shows the number of lineal feet of each particular kind of work done under the contract, and that the diagram accompanying the same is correct, and the contract furnishes the prices, it does not appear that any further certificate was necessary to enable the superintendent to apportion the expenses properly to the lands of the district.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Will D. Gould, and O. P. Widaman, for Appellants.

Frank G. Finlayson, for Adolph Ramish, Martin C. Marsh, and P. J. McCormick, Respondents.

Walter F. Haas, and W. B. Matthews, for N. A. Hartwell, City Treasurer, Respondent.

SHAW, J.—This is an action to enjoin the city treasurer of the city of Los Angeles from executing a deed to the purchasers for certain lots sold by him for the non-payment of bonds issued under proceedings for a street improvement. An answer was filed, the cause was tried by the court, and judgment given for the defendants. The motion of the plaintiffs for a new trial was denied. The appeal is from the order denying the new trial and from the judgment.

The appeal from the judgment is ineffectual, because taken, or attempted to be taken, after the time for such appeal had expired. It may therefore be disregarded. And this also disposes of the claim that the judgment is not supported by the findings. That point cannot be considered upon an appeal from an order denying a motion for a new trial.

On the appeal from the order denying the motion for a new trial appellants present numerous objections to the decisions of the court below. It is claimed that the findings are in many particulars unsupported by the evidence. The greater number of these objections are not presented in a manner that will warrant us in noticing them. The following is an example of the appellants' method of argument:—

"FINDINGS NOT SUSTAINED BY EVIDENCE.

"1. Finding II is not sustained by the evidence. It is based on Paragraph XI of agreed statement of facts. Trans. fs. 335, 314-24.

"2. Finding III is not sustained by the evidence. See statement trans. fs. 336, 393-5, 406 and 430.

"3. There is no evidence to sustain Finding VI. Trans. fs. 343, 396-412, 430."

The court and counsel for respondents are left to discover, if they can, the particular point upon which the evidence fails

CXLII. Cal.—44

to support the respective findings. "Under these circumstances we do not feel called upon to prosecute an independent inquiry in order to find out" in what respects the evidence is insufficient. (*People* v. *Woon Tuck Wo,* 120 Cal. 297; *People* v. *Glaze,* 139 Cal. 163, and cases there cited.) Counsel for respondents, with commendable industry and care, has taken the pains to consider in detail each of these general objections, and has stated particularly the reasons why, in his opinion, the evidence is sufficient, protesting, however, that he is uncertain whether or not he has perceived the exact point intended by the objection, and that he fears appellants will in their reply claim that some other objection was intended. Appellants did not file any reply, and we will presume that they were satisfied to rest their points on respondents' statement. We will treat the error as waived where the argument is limited to such a skeleton as that above quoted, and consider only those specifications of insufficiency which are more fully stated and argued.

1. The principal contention of the appellants is, that the findings that the benefits accruing to the plaintiffs' lots from the improvement of the street were in excess of the damages caused thereby, and also in excess of the assessment against the lots for the expenses of the improvement, are contrary to the evidence. The same question is raised by the exception to the action of the court in excluding evidence relating to damages and benefits. The bonds for which the city treasurer had sold the lots were a part of a series of bonds issued upon an assessment for the payment of the expenses of improving certain streets in the city of Los Angeles in a proceeding for that purpose under the provisions of the Street Improvement Law. The plaintiffs in this action in equity to enjoin the execution of the deed claim the right to impeach the validity of the assessment by evidence to the effect that the part of the costs of the improvement apportioned and assessed against their lots exceeds the benefits to those lots arising from the improvement. Stated in different language the contention is, that the validity of such an exercise of the taxing power of the state is not settled by compliance with the constitutional proceedings prescribed by law, but may be questioned by a jury or court in any subsequent collateral attack, by proof that the land of the particular individual who sees

fit to attack its validity was not benefited to the extent
of the costs apportioned against his land by the assessment.
The statement of the proposition is almost sufficient to re-
fute any argument in favor of it. It is manifest that if the
taxing power is subject to review in this collateral manner,
any exercise of it would generally be declared invalid. And
such a rule would produce inequality and unjust discrimina-
tion, for, owing to the uncertainty of human judgment and the
varying ability to array evidence in different cases, one per-
son would frequently succeed in evading payment of his
portion of the expenses, while another, similarly situated in
all respects, would be compelled to bear his share of the bur-
den. The practical effect of the doctrine would be to pre-
vent all compulsory public improvement of every description
where the means of payment of the expenses are to be obtained
by local assessment. It is contrary to the decisions of this
court as well as other authorities. (*Whiting* v. *Townsend,* 57
Cal. 519; *Jennings* v. *Le Breton,* 80 Cal. 14; *Warren* v.
*Henly,* 31 Iowa, 31; *Morrison* v. *Hershire,* 32 Iowa, 271;
*Dewey* v. *Des Moines,* 101 Iowa, 416; *Michener* v. *Philadelphia,*
118 Pa. St. 535; *Harrisburg* v. *McCormick,* 129 Pa. St. 213;
*In re Madera Irr. Dist.,* 92 Cal. 324; *Lent* v. *Tillson,* 72 Cal.
428; *Kelly* v. *Pittsburgh,* 104 U. S. 81.) It is true that local
assessments are said to be imposed on the theory that the
property adjacent to the improvement receives special benefit
therefrom. But this is a matter which is for the determina-
tion of the legislative authority of the state, acting through
its established agencies for the government of political sub-
divisions, or directly by the legislature of the state, as that
body may see fit. It is enough for the local property-owner
that he has a right to be heard before the city council upon the
question, by filing a petition of remonstrance in the proceed-
ing prescribed by law, setting forth his reasons why the im-
provement should not be made. Upon this the council must
decide the question, and its decision is final. (Stats. 1891,
196; *French* v. *Barber Asphalt Pav. Co.,* 181 U. S. 324; *Spen-
cer* v. *Merchant,* 125 U. S. 345; *Brown* v. *Drain.* 187 U. S.
635.)

In support of their position the appellants rely on the case
of *Norwood* v. *Baker,* 172 U. S. 269, and *White* v. *Tacoma,* 109
Fed. 32, following the supposed authority of the Norwood

case. For a time it was by some considered that the court
in the Norwood case had held that the question whether or
not lands assessed to pay for a local public improvement were
benefited by the improvement was always decisive of the
validity of the assessment, whether it came in review collat-
erally or otherwise. But more recently the supreme court
of the United States has made other decisions modifying the
Norwood case, so that it must now be regarded merely as a
case falling under the rule stated in *Lent* v. *Tillson*, 72 Cal.
at page 429, that a local tax of this character "will not be
upheld when the court *can* plainly see . . . that manifestly
and certainly no such benefit can or could reasonably have
been expected to result." (*French* v. *Barber Asphalt Pav.
Co.*, 181 U. S. 324; *Wight* v. *Davidson*, 181 U. S. 371; *Tona-
wanda* v. *Lyon*, 181 U. S. 389; *Webster* v. *Fargo*, 181 U. S.
394; *Cass Farm Co.* v. *Detroit*, 181 U. S. 396; *Detroit* v. *Par-
ker*, 181 U. S. 399; *Shumate* v. *Heman*, 181 U. S. 402; *Far-
rell* v. *Chicago*, 181 U. S. 404.) It is stated in *Wight* v.
*Davidson*, 181 U. S. 371, that it was thought by a majority
of the court in the Norwood case that there existed "special
facts, showing an abuse or disregard of the law resulting in
an actual deprivation of property." The expression in *Lent*
v. *Tillson*, 72 Cal. 429, above quoted, does not mean that the
court will hear the opinions of witnesses and other evidence
in a subsequent trial of a case involving the assessment, in
order to determine whether or not it "can plainly see" that
there could be no benefit, but that the court may consider such
facts as appear on the record of the proceedings, or possibly
facts of which it may take judicial notice, for that purpose.
It must be so clear that it does not admit of dispute by evi-
dence *pro* and *con;* otherwise, the legislative decision is con-
clusive, and the better opinion is, according to the authorities
above cited and many others that might be referred to, that
where the property-owner has an opportunity given him,
under the prescribed proceedings, to appear and contest the
question before the legislative body, the determination of that
body on the subject of benefits is final, and that if he fails to
appear he thereby admits the finality of the determination.
But the exact question presented by the appellant in this
case has been decided by the supreme court of the United
States in a recent case. In *Brown* v. *Drain*, 112 Fed. 582, the

plaintiff sued the street superintendent and city treasurer of Los Angeles to obtain a decree declaring invalid the local assessment for a street improvement and to quiet his title to the land assessed. The circuit court of the United States in that case held that the offer of the plaintiff to allege and prove that the benefits accruing to his property from the improvements did not exceed two thousand dollars, whereas the assessment was over five thousand dollars, was wholly immaterial, and that these facts would not, if alleged and proven, affect the validity of the proceedings, the position of the court being, that the determination of the city council on that subject under the Street Work Act, was exclusive. This case was appealed to the supreme court of the United States, and the decision was affirmed by that court on the authority of *French* v. *Barber Asphalt Pav. Co*, 181 U. S. 324, and the other like cases above cited. (*Brown* v. *Drain,* 187 U. S. 635.) The question may therefore be considered as absolutely settled, and the decision in the Norwood case as thoroughly discredited, although not expressly overruled.

The same authorities and reasoning apply with like force to the contention that the court should have determined that the benefits were exceeded by the damages arising from the grading of the lot to the official grade. The proceedings for the change of grade antedated the proceedings for the improvement in question. They were had in 1896, under the act of 1891, and the amendments of 1893 thereto. (Stats. 1891, 461; Stats. 1893, 89.) These acts provide that any abutting owner feeling aggrieved may file a petition showing his damages, and may have the same determined by the council. In the present case the owners failed to claim any damages. They must therefore be held to have waived any right to object on that ground to the proceedings for the change of grade. If they or either of them have in fact suffered damage by reason of the change of the grade, it may be that they have a right of action against the city therefor. (*Eachus* v. *Los Angeles etc. Ry. Co.* 103 Cal. 614.[1]) As to this we express no opinion. But that they cannot defeat the assessment for the improvement by showing such damage was expressly decided in *Hornung* v. *McCarthy,* 126 Cal. 17. It is clear that the nonpayment of any such damages does not affect the assessment

[1] 42 Am. St. Rep. 149.

to pay the cost of the work of grading, graveling, and curbing. The two are entirely distinct and independent. The Street ₁Work Act makes no provision for damages, nor does it refer thereto. The right to damages arises solely from the constitutional provision that private property cannot be damaged for public use without compensation having been first made to the owner. (*Reardon* v. *San Francisco,* 66 Cal. 492.[1]) the assessment for the cost of the work is not made until the improvement is completed. The right to payment of the damages as a precedent condition then ceases, for then the work is done and the damage is not paid. If the owner desires to preserve his right to antecedent payment he must sue to enjoin the work, not the collection of the assessment. But whether he does enjoin the work or not, the right to damages is an independent right against the city, and does not affect the power to tax the district for a different purpose,—namely, to raise funds to pay the expenses of grading and improving the street which has been dedicated to public use.

Our decision upon these points disposes of many others presented by the record. As the allegations of the complaint with respect to damages and absence of benefits. could not defeat the assessment, if proved, it follows that the findings on these points were immaterial. It does not matter whether those findings, or others depending on their sufficiency, are or are not supported by the evidence, and the refusal to admit evidence relative thereto could not be error.

2. Appellants claim that the assessment was void because of an agreement entered into between the contractors and certain property-owners after the contract was awarded, whereby the owners, who were about to elect to take the contract themselves under their statutory right, waived their right to do so, and the contractors, in consideration thereof, agreed to give the owners signing the agreement a reduction of twenty-five per cent upon their respective assessments. It was provided in the agreement that any property-owner might become a party thereto by signing the same, but it does not appear that the plaintiffs were informed thereof. The owners signing the agreement held more than one fourth of the frontage along the proposed improvement, and the result was, that

[1] 56 Am. Rep. 109.

as the remaining owners did not own three fourths of the frontage, they could not take the contract themselves at the contract price. This, it is claimed, was fraudulent and sufficient to invalidate the assessment. It is a well-settled principle that fraud without injury gives no right of action, and it is clearly applicable to cases of this sort. It is not alleged that the plaintiffs, if they had succeeded in combining with other property-owners to take the contract and perform the work, could have completed it at less expense than the contract price. Under the law the contract must have been let to such owners at the same price at which it was let to the contractors. The price being the same, the assessment must therefore have been the same, and it follows that the owners taking the contract could gain no benefit therefrom unless there was a profit in doing the work at that price. There is neither allegation nor claim that there would have been any profit. Moreover, it is not averred that either of the plaintiffs desired to take the contract, or that either of them would have done so had the opportunity been afforded, or that they made any effort in that direction. It is alleged that certain named owners, comprising more than three fourths of the frontage, were about to combine for the purpose of taking the contract, but the plaintiffs were not included among them. They therefore could not have participated in any profits which the others might have made, and would have been compelled to pay the same amount for the improvement as that charged against them by the assessment in question. The alleged agreement could not, under any theory warranted by the facts, have prejudiced the plaintiffs, and hence it furnishes no ground for declaring the assessment void.

3. There is nothing in the point that the finding states that the plaintiffs were not the owners of the property, and that this is contrary to the stipulation of the parties. The finding is, that they are the owners, except so far as their title has been divested by reason of the sale which the complaint attacks, which is in strict accordance with the pleadings and stipulation in the case.

4. There is no finding that is contrary to the asserted admission of the pleadings that a perpendicular bank sixteen feet in height had been left in front of the lots in controversy,

but if there had been, the finding would be entirely immaterial; for such fact could only go to prove damage by reason of the improvements, and the question of damages, as we have seen, has no bearing upon the case.

5. The point that the proceedings to declare the change of grade should have been had under the city charter of the city of Los Angeles is without merit. The proceedings took place under the acts of 1891 and 1893, as above stated, and prior to the election in November, 1896, at which time the constitutional amendment was adopted making the charter paramount in municipal affairs. The proceedings were therefore properly had under the law instead of under the charter. The claim that the proceedings for the improvement of the street should have been taken under the charter provisions is also without foundation. In the case of *Banaz* v. *Smith*, 133 Cal. 102, this court decided that as the Street Improvement Act was in force at the time the charter was adopted, the constitutional amendment of 1896 had no effect upon it, and it still remained in force, and controls such proceedings, notwithstanding the provisions of the charter.

7. The appellants also claim that the assessment district, as fixed by the council, did not include all the property fronting on the streets improved. Under the Street Improvement Act the council has the power to declare the work to be of more than ordinary public benefit, and to make the assessment upon a district instead of upon the front-foot plan. The same section gives the property-owners the right to object to the boundaries of the district, and to a notice and hearing before the council upon that subject. Upon the same principles and authorities heretofore referred to in reference to the question of benefits, it must be held that the property-owner, having this right, must avail himself of it, or be concluded by the decision of the council. It does not appear that any objection was made to the boundaries of the district, and hence it must be held that the decision of the council as to its extent was correct. There is nothing in the law which requires the assessment district fixed by the council to include all the property fronting on the streets. The court cannot say that it might not be possible that some of the property fronting on the streets would not be benefited by the improvement. But

we are of the opinion further that the particular property in question, the Galpin tract, does not, within the meaning of the statute, front upon the streets improved. Figueroa Street and Beaudry Avenue were two of the streets improved. They did not cross each other, but approached at an acute angle, and at the point where the north line of the Galpin tract crossed they coincided and became a single street. The improvement in question, by the resolution of intention, was to extend on those streets from the line of Third Street southerly to the north line of the Galpin tract. The land in question, therefore, did not front on the streets, in the strict meaning of the term, but was situated in the end thereof and at right angles to the street line. Property so situated need not be included in an assessment, even on the front-foot plan, unless the street is a mere *cul-de-sac*. If the street should be extended through such a tract, the part thereof abutting thereon would be chargeable on the front-foot plan with its proper portion of the expense of improving such extension, but it would not necessarily be liable for any part of the expense for improving the other portions of the street either under the front-foot plan or the district plan of assessment.

8. It is further objected that the description of the district is uncertain. We have examined the description and cannot find any uncertainty in it, and as counsel has not pointed out the particulars the point must be decided against him.

9. The last objection which we will notice is that the certificate of the city engineer is not made in accordance with the law. The law on this subject is not clear. Section 9 provides that the "warrant, assessment, and diagram, together with the certificate of the city engineer, shall be recorded in the office of said superintendent of streets." There is no provision of the act expressly requiring the engineer to make any certificate in any case. Section 34, however, provides that the city engineer shall do the surveying and engineering work necessary, and survey and measure the work done under contracts for grading and macadamizing, and estimate the cost and expense thereof, and that every certificate signed by him in his official character shall be *prima facie* evidence in all courts of the truth of its contents. The only certificate necessary for the purposes of the case in question here, assuming

that one is necessary, would be a certificate giving to the street superintendent the facts necessary to enable him to make the assessment according to law. The work was let by the lineal foot, and the certificate in question shows the number of lineal feet of each particular kind of work done under the contract, and that the diagram accompanying the same is correct. The contract furnishes the prices, and it does not appear that anything further was necessary to enable the superintendent to apportion the expenses properly to the lands of the district.

There are no other points in the record which require notice. We find no error in the rulings of the court.

The order appealed from is affirmed, and the appeal from the judgment is dismissed.

Angellotti, J., Van Dyke, J., McFarland, J., Lorigan, J., and Henshaw, J., concurred.