[S. F. No. 8201. In Bank.—January 5, 1920.]

### CARL G. LARSEN, Appellant, v. THE CITY AND COUNTY OF SAN FRANCISCO (a Municipal Corporation), et al., Respondents.

[1] MUNICIPAL CORPORATIONS—TUNNEL CONSTRUCTION ASSESSMENT—CONTEST—PLEADING—PARTIES.—In an action to contest the validity of a municipal tunnel construction assessment, it is not necessary that the mayor and the clerk of the board of supervisors be made parties defendant, where no good reason appears for making them parties aside from their official position.

[2] ID.—SAN FRANCISCO CHARTER—TUNNEL CONSTRUCTION—ADOPTION OF PROCEDURE ORDINANCE—RIGHT OF BOARD OF SUPERVISORS.—Under chapter VIII of article VI of the San Francisco charter, the board of supervisors may adopt a procedure wholly different from that provided by chapter II of article VIII for the acquisition of property for a right of way and approaches for a tunnel, and for an assessment on private property for the costs and damages.

[3] ID.—USE OF TUNNEL—OPERATION OF STREET-CARS—RIGHT OF CITY NOT EXCLUSIVE.—Under article VI, chapter VIII, section 5, of its charter, the city and county of San Francisco cannot have an exclusive right to the use of a tunnel constructed to provide a way for one or more street-car lines, and the use of the tunnel exclusively for cars on a branch of the street-car system operated by the city is unauthorized.

[4] ID.—CONSTRUCTION OF TUNNEL FOR STREET-CARS—SPECIAL BENEFIT TO PRIVATE PROPERTY OWNERS.—The construction of a municipal tunnel in which no way is provided for passage through it except in street-cars is specially beneficial to private property upon which the assessment is levied, where without the making of the tunnel the inhabitants of the more remote district could not reach the city by means of street-cars except by a circuitous

route involving considerable delay, and means of access to the city is confined to such car lines and to travel by vehicles or on foot over steep hills.

[5] ID.—ASSESSMENT IN EXCESS OF BENEFITS—WHEN VALID.—Where conditions are such that the city authorities might reasonably conclude that there was special benefit to the property assessed, the court cannot set aside the assessment on the ground that it exceeds the benefits received from the improvement.

[6] ID.—TUNNEL NOT OPENED TO ALL MODES OF TRAVEL—PUBLIC USE.—A municipal tunnel between two parts of the municipality is a public improvement, for the public benefit, and is a public use, although not open to all modes of travel, where it is open to the general public for travel on street-car lines running through it.

[7] ID.—TUNNEL CONSTRUCTION ORDINANCE—PUBLIC USES—VALIDITY UNAFFECTED.—The claim that a tunnel construction proceeding is invalid because the tunnel constitutes a single public use, whereas the tunnel procedure ordinance authorized the construction of a tunnel "for public uses," is without merit, since the singular number includes the plural, and *vice versa.*

[8] ID.—ACQUISITION OF LAND FOR TUNNEL PURPOSES—SAN FRANCISCO CHARTER.—Article VI, chapter VIII, sections 1, 2, 3, and 6, of the charter of the city and county of San Francisco, authorize the construction of a tunnel through land to be acquired, if the city does not already have the necessary property, and to carry on both the acquisition and construction in a single proceeding, and the city is not limited in the construction to land in which it has a previous easement.

[9] ID.—ACQUISITION OF STRIP NECESSARY FOR CONSTRUCTION—EFFECT OF CHARTER PROVISION.—In view of article VI, chapter VIII, section 2, of the charter of the city and county of San Francisco, where the resolution of intention for the construction of a tunnel shows that a part of the ninety-foot strip was acquired as an addition to the width of a street, a part of which was taken for the tunnel and thereby made unfit for a street, such strip must be deemed necessary for the construction.

[10] ID.—USE OF ENTIRE STRIP—RECORD—PRESUMPTION ON APPEAL.—In a proceeding to set aside an assessment for the construction of a municipal tunnel in the city and county of San Francisco, the burden rests upon the plaintiff taxpayer to show errors in the decision of the board of supervisors in acting upon the report of the board of public works, not shown upon the face of the record.

[11] ID.—PROPERTY NOT BENEFITED—OMISSION FROM ASSESSMENT—CONSTRUCTION OF TUNNEL CONSTRUCTION ORDINANCE.—A provision in a municipal tunnel construction ordinance that upon receiving the resolution of intention of the board of supervisors ordering the

construction of the tunnel, the board of public works, after first determining the amount of damages that will be sustained by persons claiming damages, must estimate the total amount of costs of construction, including the costs of acquiring the necessary land and the damages sustained, and assess the total sum upon the several lots of land benefited within the district or districts of assessment, so that each of the lots shall be assessed in accordance with its benefits caused by such construction, necessarily implies that no benefits shall be assessed against any parcel which the board may find is not benefited.

[12] ID.—OMISSION OF NONBENEFITED PARCELS—DISCRETION OF BOARD OF PUBLIC WORKS—CONSTRUCTION OF TUNNEL CONSTRUCTION ORDINANCE.—A provision in such an ordinance that the board of public works must prepare and report to the supervisors a map of the districts as specified in the resolution of intention, showing the subdivisions of property therein as shown by the assessment maps of the city and county assessor, giving each subdivision a separate number, a list showing the names of the persons to whom each parcel is assessed and an estimate of the benefits which each of the respective subdivisions or parcels will receive from and by the construction of the tunnel, implies discretion to estimate that some parcel will receive no benefit.

[13] ID.—UNASSESSED PROPERTY WITHIN ASSESSMENT DISTRICT—RIGHT OF PROTEST BY PERSON INTERESTED—CONSTRUCTION OF TUNNEL CONSTRUCTION ORDINANCE.—A provision in such an ordinance that any person interested may object to the extent of the districts declared to be benefited in the resolution of intention, or to the amount of benefits fixed by the board of public works in its report, or to any other act, determination or proceeding of the board or of the supervisors in the proceeding, and may file a written statement of his objections, and on those grounds protest against the confirmation of the reported assessment, implies the right to protest against the omission to assess benefits upon any parcel not reported as benefited by the board of public works.

[14] ID.—PROPERTY BENEFITED—AMOUNT OF ASSESSMENT—FINALITY OF DECISION OF BOARD OF SUPERVISORS.—The final decision of the board of supervisors as to the property benefited and the amount to be assessed for tunnel construction is conclusive, unless attacked on the ground of fraud or mistake.

[15] ID.—BOARD OF SUPERVISORS' ULTIMATE AUTHORITY.—The court will not declare such decision void unless it can plainly see from the face of the record or from facts judicially known that the assessment so finally confirmed is not proportional to benefits.

[16] ID.—ACTION TO SET ASIDE ASSESSMENT—INQUIRY AS TO OTHER ASSESSMENTS—CONSTRUCTION OF ORDINANCE.—Provision in a

municipal tunnel construction ordinance that an action may be begun by any person aggrieved to contest the validity of the assessment does not give a contestant the right to inquire into the particulars of each assessment and have the court revise it and set it aside if it shall find a different apportionment would be more just, or equitable, or that some of the lots not assessed were benefited.

[17] ID.—FILING PROTESTS TO REPORT OF BOARD OF PUBLIC WORKS—REASONABLENESS OF TIME.—A municipal tunnel construction assessment is not invalid because persons interested were only given twenty days after the first publication of the notice of the filing of the report of the board of public works with the board of supervisors to file their protests, the said period not being unreasonable.

[18] ID.—ACTION TO SET ASIDE ASSESSMENT—EVIDENCE—BENEFITS—ACTION OF BOARD IN MAKING ESTIMATE.—In an action to set aside a municipal tunnel construction assessment, it was not erroneous to exclude evidence as to how the board of supervisors proceeded in estimating what the benefits assessed should be upon different blocks, since such evidence was incompetent to impeach the assessment finally made by the supervisors upon the hearing.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Seawell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edward C. Harrison, Maurice E. Harrison and James A. Cooper for Appellant.

George Lull, City Attorney, and Theodore J. Savage for Respondents.

SHAW, J.—The Twin Peaks tunnel pierces the high ridge which separates the more densely populated portion of San Francisco from the large and comparatively level region lying west of the said ridge and constituting the watershed of Lake Merced. The length of the tunnel is eleven thousand two hundred feet. It was constructed by the city and county of San Francisco under the authority of chapter VIII, article VI, of the San Francisco charter, and under the procedure provided by an ordinance passed by the board of supervisors of San Francisco, pursuant to authority given in said chapter, on October 20, 1913. For the cost of making the tunnel an

assessment was levied by the city in said proceeding, covering lands near both ends of the tunnel, including certain lands of the plaintiff. The present action was begun by the plaintiff under section 12 of the ordinance above mentioned, for the purpose of contesting the validity of the assessment and to quiet plaintiff's title to the said lands against the claims of the city of San Francisco thereunder. Judgment was given in favor of the defendant. The plaintiff appeals therefrom.

[1] The mayor of the city and county and the clerk of the board of supervisors are made parties defendant. With regard to their acts and conduct under color of their said offices they will be bound by a judgment against the municipal corporation, even if they are not parties to the action. It is not claimed that either of them has done or threatens to do any unofficial act to the prejudice of the plaintiff. Consequently no good reason appears for their presence as parties and we need not notice the fact further.

An ordinance similar to the tunnel procedure ordinance of October 20, 1913, aforesaid, was under consideration by this court in *Mardis* v. *McCarthy,* 162 Cal. 94, [121 Pac. 389], and again in *Hayne* v. *San Francisco,* 174 Cal. 185, [162 Pac. 625]. In each of these cases the objections there urged against the validity of that ordinance were held to be untenable. In the present action the appellant advances certain other reasons against the validity of the ordinance of 1913. He also claims that, even if the ordinance is valid, the assessment is void because of other objections and defects which we will state in detail as we proceed.

1. The ordinance was adopted under the power conferred upon the city by chapter VIII of article VI of the charter. This chapter empowers the board of supervisors to order the construction of and construct a tunnel and levy the damage, cost, and expenses thereof upon private property "in the manner and under the procedure and powers in chapter II of this article provided for street work and street improvement." It further provides that the method of procedure in chapter II shall not be exclusive, but that the board of supervisors may adopt an ordinance "providing a method of procedure for such improvement, work, and assessment and for the ascertainment and payment of damages and for the manner in which protests against such assessments and damages awarded may be heard and determined, and for the manner

in which such assessment may be collected and paid,'' and
for fully and completely exercising the powers conferred by
the section. In said chapter II, after giving the city power
to make street improvements, other provisions follow pre-
scribing the procedure to be followed in exercising the power.
An application of property owners to the board of public
works must be made in order to start the proceeding, ''except
where otherwise provided.'' The board must then pass a
resolution of its intention to recommend the doing of the
work and must recommend the same to the supervisors, be-
fore the improvement is ordered. The appellant insists that
these provisions of chapter II are limitations upon the power
therein conferred, and that by the reference aforesaid, in
chapter VIII, they are carried into and become limitations
upon the power to construct tunnels and also upon the power
to adopt, by ordinance, the procedure to be observed in the
construction of tunnels, that, consequently, such ordinance
must also provide for an application of owners and a resolu-
tion and recommendation by the board of public works, as a
condition precedent to ordering the tunnel construction, and
that as this ordinance does not do so, it is void. To this
we cannot agree. The provisions of chapter VIII differen-
tiate clearly between methods of procedure and the grant of
power, and between the grant of power to construct tunnels
and the grant of power to provide the procedure therefor.
The two grants are independent of each other. It is true that
proceedings for assessing the cost of public improvements
upon private property are to be strictly followed and that,
as is often said, ''the mode is the measure of the power,'' so
that in doing street work under chapter II the method of
initiating the proceeding must be followed in order to make
a valid exercise of the power there conferred. But to hold
that the reference to chapter II, contained in chapter VIII,
imports into the latter chapter all of the provisions for pro-
cedure provided in chapter II, as limitations upon the power
conferred in chapter VIII, including the power to adopt an
ordinance prescribing the procedure, would, in effect, entirely
destroy the power given in chapter VIII to adopt a method
of procedure. Such an absurd result cannot be allowed unless
positively necessary. Such a construction is not imperative.
It is more reasonable to suppose that the reference in chapter
VIII to the procedure and powers provided in chapter II for

street work had reference to procedure alone and did not incorporate such procedure into chapter VIII, as limitations upon the power to construct tunnels and to adopt ordinances of procedure therefor, but left the board of supervisors at liberty to adopt a procedure wholly different from that provided in chapter II. This we believe to be the true construction of the charter in this particular.

[2] The same reasons apply with equal force to the contention that the power given in chapter VIII to adopt an ordinance of procedure for the acquisition of property for a right of way and approaches for such tunnel and for levying an assessment on private property for the cost and damages must conform to the procedure prescribed in chapter II of said article. The provisions in that respect are in the same form as those relating to the construction of tunnels.

2. The resolution in question states that the public interest and convenience require the construction of the Twin Peaks tunnel "for public uses," but do not specify or describe the particular public use or uses to which it is to be devoted. It appears from the evidence, however, that no way is provided for passage through the tunnel by persons traveling on foot or in vehicles, or otherwise than in street-cars. It is conceded by the respondents that as it exists it cannot be used except as a way upon which to lay tracks for street-car lines and for the passage of persons through it while in such cars, and that no other use was intended. The charter provides that two or more street-car lines, operated under different managements, may use a tunnel constructed under the power given in chapter VIII and that the city and county may use it for a municipal street-car line, either singly or jointly with another street-car line, but that no exclusive right to its use by a street-car line shall ever be given. (Art. VI, c. VIII, sec. 5.) It also appears that since its completion the tunnel has been used exclusively as a passageway for cars on a branch of the street-car system operated by the city and county. [3] It is manifest from the terms of the charter just stated that the city and county has, and can have, no exclusive right to such use, and that the object to be accomplished in making this tunnel was to provide a way for rapid transit between the two sections of the city aforementioned for one or more street-car lines.

The appellant contends that no assessment for the cost of
a tunnel for such purposes can be made upon private prop-
erty; that such a railroad must be the property of a private
corporation or of a municipal corporation acting in its pro-
prietary capacity; that if it belongs to a private corporation
the tunnel would not be for the public benefit, but would be
for the benefit of such corporation, which is a purpose for
which a special assessment upon private property cannot law-
fully be made, while if the railroad belongs to the municipal
corporation, the tunnel would be for the general benefit of
the municipality and the expense thereof could lawfully be
met in no other way than by a general *ad valorem* tax upon
all property within the city.

It has been said that the power to levy a special assessment
upon private property for public purposes "is not a power
to tax property generally, founded upon the benefits sup-
posed to be derived from the organization of a government
for the protection of life, liberty, and property, but a power
to tax specific property, founded upon the benefit supposed
to be derived by the property itself from the expenditure of
the tax in its immediate vicinity. Hence, property not ben-
efited by the improvement cannot be subjected to the burden
imposed for that purpose." (*Taylor* v. *Palmer*, 31 Cal. 254.)
In *Lent* v. *Tillson*, 72 Cal. 428, [14 Pac. 81], speaking of the
right to levy local assessments for public improvements, the
court says that, where it can plainly see that the tax is not
for the benefit of the property, but wholly for the private
advantage of an individual, it would declare the assessment
void, and it proceeds to say: "Still the benefit is not the source
of the power. That is inherent in the government, and is
only limited by express or implied limitations found in the
constitution, or by its own nature and purposes. Within
these limits the legislature is the sole judge of when and to
what extent the power shall be used." In another case the
court said: "While it is held that an apportionment of the
expenses for a local improvement is to be made according
to the benefits received by the property assessed, yet the
power to make such apportionment rests upon the general
power of taxation, and the apportionment of the expenses
for a local improvement is to be made according to the
benefits received by the property assessed, yet the power to
make such apportionment rests upon the general power of

taxation, and the apportionment itself does not depend upon the fact of local benefit in any other sense than that all taxes are supposed to be based upon the benefit received by the taxpayer.'' (*In re Madera Irr. Dist.*, 92 Cal. 326, [27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272, 675].) It is not necessary here to determine whether the power to levy a local assessment for the expenses of a public improvement is limited to cases where a special benefit is conferred thereby upon the assessed property or not. It must be conceded that where there is a peculiar benefit from a public improvement to the property assessed, the power to levy a special assessment for its cost exists. [4] We are satisfied that the construction of the tunnel here involved is specially beneficial to the property upon which the assessment is levied, to the extent necessary to justify the assessment. The districts assessed, as before stated, include a large area southwesterly of the Twin Peaks ridge and another but a more limited area in the neighborhood of the easterly extremity of the tunnel. Before the making of such tunnel the inhabitants of the more remote district could not reach the city by means of street-cars except by a circuitous route involving considerable delay, and means of access to the city was confined to such street-car lines and to travel by vehicles and on foot over steep hills. By reason of the construction of this tunnel, and the operation of a street-car line through it, they have a ready and speedy means of access to the city, and the resulting benefit to their property is apparent. [5] While the special benefit to the property about the easterly entrance is not so easily demonstrated, it is obvious that the conditions are such that the legislative authorities of the city might reasonably conclude that there was such special benefit. That being the case, the court cannot set aside the assessment on the ground that it exceeds the benefits received from the improvement. (*Lent* v. *Tillson*, 72 Cal. 428, [14 Pac. 81]; *Duncan* v. *Ramish*, 142 Cal. 692, [76 Pac. 661].) This sufficiently meets the argument on this point.

[6] It cannot be successfully contended that such a tunnel is not a public improvement, or that its use is not for the benefit of the public, or that it is not a public use. A public way is for the general public benefit, although not open to all modes of travel, provided it is open to the general public for travel thereon in the manner to which it is adapted.

[7]  There is no merit in the claim that the proceeding is invalid because the tunnel constitutes a single public use, whereas the tunnel procedure ordinance authorizes the construction of a tunnel "for public uses."  "The singular number includes the plural, and the plural the singular."  (Civ. Code, sec. 14.)  This is a rule of general application where the context does not limit the meaning.  Furthermore if we were disposed to be technical, it could be said that as the charter devotes the tunnel to the use of two or more separately owned street railroads, it is in fact constructed for "public uses."

3. It is claimed that the charter confers no power upon the city and county to make a tunnel, except in or under a public street, or under land belonging to it or in which it may have an easement, and that, as this tunnel runs in part through land which is not a public street and in which the city then had no easement and which it did not own at the time the proceeding was begun, the assessment was beyond the power given and is therefore invalid.  [8]  We think this is not the true effect of the charter.  Chapter VIII consists of six sections.  Section 1 gives the board of supervisors power to construct any tunnel under any "open public street in the city and county," or under "any other land of the city and county," or under any land or water "in which and where the city and county *may then* have an easement or right of way therefor."  Section 2 empowers the board to acquire for the municipality, by purchase or condemnation, any and all land, or easement therein, or any property necessary or convenient for such tunnel, and to raise the money for such acquisition by means of an assessment upon private property; also to adopt ordinances providing a procedure to that end.  Section 3 authorizes the board to accomplish in a single proceeding both the acquisition of the property for a tunnel and the construction of the tunnel itself and to pass the ordinances necessary to allow such consolidation of the two purposes in such single proceeding.  The ordinance adopted provides for such consolidated proceeding.  Section 6 authorizes two or more tunnels to be constructed in pursuance of one general plan under one proceeding and any or all acquisitions of lands, easements, or rights of way and property necessary and convenient for the same in the same

proceeding, and that the property benefited may be assessed for the costs, damages, and expenses of the entire proceeding.

These provisions could have been adopted upon no other theory than that if the city and county did not already have the property necessary for the proposed tunnel or tunnels, it could acquire such property and order and carry on the construction of the tunnel in a single proceeding including both purposes. The phrases, "any other land of the city and county" and "in which and where the city and county may then have an easement" in section 1, must, in view of the subsequent provisions of the chapter, be taken to refer to any period of time antecedent to the actual construction of the tunnel, or, possibly, antecedent to the letting of the contract therefor or the beginning of the work thereon, and not to require that the city shall own the property or easement necessary for the tunnel before or at the time when the proceeding to construct it is initiated. Any other construction of section 1 would render the provisions of sections 2 and 3 inoperative and unnecessary so far as they authorize the combination of the two purposes in a single proceeding. These provisions, therefore, point the meaning of the language of section 1 as above stated. The several sections, when considered together, show an intention to authorize the construction of a tunnel through land to be acquired in a consolidated proceeding, including both the acquisition and the construction.

4. The proceedings included the acquisition, at a cost of $514,935, of a strip of land about ninety feet wide and one thousand nine hundred feet long, at the eastern end of the tunnel at the end of Market Street. Appellant claims that the assessment is void because this strip constitutes an extension of Market Street and because a strip of land ninety feet wide cannot be necessary for a tunnel only twenty-four feet wide in the clear, exclusive of the walls or casings. The only evidence to support this contention was the original resolution of intention and the testimony of a witness, who said he was a civil engineer, that he had examined the plans, and that it was not necessary to have the strip of land ninety feet wide in order to construct the tunnel as planned. The record shows that the strip in question was acquired because it was necessary and convenient for the construction of the tunnel. No mention is made therein of Market Street or of

any extension thereof. [9] This is conclusive on that point. The testimony of said witness is literally true, for the resolution of intention shows that a part of the ninety-foot strip was acquired as an addition to the width of Seventeenth Street, a part of which was taken for the tunnel and thereby made unfit for a street. The charter authorizes this, and declares that land taken for such purpose shall be deemed necessary for the construction of such tunnel. (Article VI, chapter VIII, section 2.) This answers the objection with respect to that part of said ninety-foot strip.

The procedure ordinance provides that the board of public works shall make and report to the supervisors plans for the tunnel, an estimate of the costs and expenses thereof, a map showing the assessment district proposed, with a statement of the damages to lands affected by the tunnel and the benefits to the lands in such assessment district. Thereupon there is to be a public hearing, upon notice, after which the supervisors may modify, confirm, or reject the report, or modify it and confirm it as modified. Elaborate plans were made by the board and reported to the supervisors. The required notice was given, protests were filed and there was a hearing of the matter. At that hearing the report was modified and confirmed as modified. This was the equivalent of a decision by the board of supervisors that the protests were not well founded; that all of the proceedings up to that point had been correctly taken, and that all the lands proposed to be taken were necessary for the construction of the proposed tunnel. This determination is presumed to be correct. [10] The burden of proof rested upon the plaintiff to show errors in the decision, except in so far as they are shown upon the face of the record. The report to the supervisors, including the plans and maps, were introduced in evidence. They are not included in the record before us. While the original resolution stated that the main bore of the tunnel was to be twenty-four feet in the clear, it does not state that no part of it is to be wider. The plans would show the size and width of all parts of it. In the absence of evidence to the contrary, we must presume that the plans adopted call for the acquisition and use of the entire strip for tunnel construction. (*Appeal of Piper*, 32 Cal. 538.)

5. The next objection of the plaintiff is that the entire assessment is void because it appears upon its face that the

apportionment of the cost is not proportional or uniform. This objection is founded upon the facts that the assessment shows upon its face that certain lots included within the assessment districts are not assessed at all, and that of lots which plaintiff claims are similarly situated some are assessed at one-eighth of a cent per square foot, and others at a much higher rate, varying from one and three-quarters cents to three and one-half cents per square foot. No extrinsic evidence was given tending to prove that the lots not assessed were in fact benefited by the tunnel.

The provisions of the procedure ordinance show that the district and the lands to be assessed were not to be finally fixed in advance by the supervisors in the resolution of intention. It is the order of confirmation of the report of the board of public works, as modified by the supervisors upon the hearing of protests, that fixes the exact limits of the assessment district and the precise parcels of land to be assessed. The ordinance declares that the resolution of intention to order the construction of the tunnel must "specify the exterior boundaries of the district or districts of land to be benefited by such construction and to be assessed to pay the damages, costs, and expenses thereof." (Section 2.) But this is not the final decision on the subject. Upon receiving this resolution, the board of public works, after first determining the amount of damages that will be sustained by persons claiming damages, must estimate the total amount of costs of construction, including the costs of acquiring the necessary land and the damages sustained, and assess the total sum "upon the several lots of land benefited within the district or, districts of assessment, so that each of the lots shall be assessed in accordance with its benefits caused by such tunnel construction." (Section 5.)  **[11]**  This necessarily implies that no benefits shall be assessed against any parcel which said board may find is not benefited. The said board must thereupon prepare and report to the supervisors a map of the districts as specified in the resolution of intention, showing the subdivisions of property therein as shown by the assessment maps of the city and county assessor, giving each subdivision a separate number, a list showing the names of the persons to whom each parcel is assessed, "and an estimate of the benefits which each of the respective subdivisions or parcels will receive from and by the construction of such tun-

nel.'' (Section 6, subdivisions 3 and 4.) **[12]** This also implies discretion to estimate that some parcel will receive no benefit. Any person interested may object to the extent of the districts declared to be benefited in the resolution of intention, or to the amount of benefits fixed by the said board in its report, or to any other act, determination, or proceeding of the board of public works or of the supervisors in the proceeding, and may file a written statement of his objections and on those grounds protest against the confirmation of said reported assessment. (Section 8.) **[13]** This implies the right to protest against the omission to assess benefits upon any parcel not reported as benefited by the board of public works. All these objections, and the accuracy and propriety of the several assessments reported to the supervisors, come in review upon the final hearing before the supervisors, after the giving of the required notice. Upon such hearing the boundaries of the district and the amounts of the several assessments of benefits may be changed and corrected as the supervisors, upon the evidence then taken, shall deem proper. It is the report as thus changed, the assessment district as then defined, and the parcels of land then determined to have been benefited by the work, that ''shall constitute the assessment made and levied for defraying the damages, costs, and expenses of such tunnel construction, and the amount of the benefits set opposite each parcel of land shall constitute the amount of the assessment thereon.'' (Section 10.)

**[14]** Under the principles established in this state and elsewhere, this final decision of the supervisors as to the property benefited and the amount to be assessed is conclusive, unless attacked on the ground of fraud or mistake.

There is a distinction between the power of the board making the assessment in cases where the legislature has itself fixed the limits of the assessment district and designated the land which is benefited and which is to be assessed for the expense of a public improvement, and cases where a local legislative body has authority to levy the expenses upon a district to be fixed by itself and to determine what property is benefited and is to be assessed for the improvement. The ordinary case of a front-foot assessment is an example of the first alternative. There the legislature has declared what property shall be assessed, and its declaration is a determination that the property to be assessed is also the property

benefited. In a case of that character the board which levies the assessment cannot depart from the legislative determination, and if it omits from the assessment any parcel of the land which the legislature has thus declared is benefited and is to be assessed for the improvement, the assessment is void. (*People* v. *Lynch,* 51 Cal. 15, [21 Am. Rep. 677]; *Dyer* v. *Harrison,* 63 Cal. 447; *Diggins* v. *Brown,* 76 Cal. 318, [18 Pac. 373].)

[15] It is obvious that these decisions do not apply to cases like the one at bar. The board of supervisors is the ultimate authority which is empowered to finally determine what lands are benefited and what amount of benefits shall be assessed against the several parcels benefited by the construction of the tunnel. This determination is made after a full hearing accorded to all persons interested to make such objection as they see fit. In such a case the court will not declare the assessment void unless it can plainly see from the face of the record, or from facts judicially known, that the assessment so finally confirmed is not proportional to the benefits, or that no benefits could accrue to the property assessed. (*Duncan* v. *Ramish,* 142 Cal. 692, [76 Pac. 661]; *Lent* v. *Tillson,* 72 Cal. 429, [14 Pac. 71].) In *Duncan* v. *Ramish* the validity of a street assessment upon a district benefited was involved. The plaintiff sought to prove that benefits accruing to his lots from the improvement were less than the assessment against them. The court said: "It is true that local asessments are said to be imposed on the theory that the property adjacent to the improvement receives special benefit therefrom. But this is a matter which is for the determination of the legislative authority of the state, acting through its established agencies for the government of political subdivisions, or directly by the legislature of the state, as that body may see fit. It is enough for the local property owner that he has a right to be heard before the city council upon the question, by filing a petition of remonstrance in the proceeding prescribed by law, setting forth his reasons why the improvement should not be made. Upon this the council must decide the question, and its decision is final." The plaintiff there also claimed that the district, as fixed by the council, did not include all the property fronting on the streets improved, that is to say, that property benefited was not assessed. The statute gave power to the council to

make the assessment upon a district, instead of upon the frontage plan, and, as before stated, it gave the property owners the right to object to the boundaries and to a hearing before the council upon that subject. The court said, referring to the passage above quoted: ''Upon the same principles and authorities heretofore referred to in reference to the question of benefits, it must be held that the property owner, having this right, must avail himself of it, or be concluded by the decision of the council. It does not appear that any objection was made to the boundaries of the district, and hence it must be held that the decision of the council as to its extent was correct. There is nothing in the law which requires the assessment district fixed by the council to include all the property fronting on the streets. The court cannot say that it might not be possible that some of the property fronting on the streets would not be benefited by the improvement.'' (142 Cal. 696, [76 Pac. 665].) In *Haughawout* v. *Raymond*, 148 Cal. 313, [83 Pac. 54], the court said: ''The contention that benefited property was omitted from the assessment and the whole assessment is therefore invalid is disposed of by the case of *Duncan* v. *Ramish,* 142 Cal. 686, [76 Pac. 661].''

There is a statement in *Davies* v. *Los Angeles,* 86 Cal. 49, [24 Pac. 771], to the effect that where the property in an assessment district is not all assessed, the assessment is invalid. There is no discussion of the question and the matter of the finality of the determination of the board after a hearing is not even suggested. The plaintiff also cites *Moulton* v. *Parks,* 64 Cal. 181, [30 Pac. 613]. There is a declaration in that decision that a board of supervisors which has power to create an assessment district determining that certain lands and none other are benefited by a proposed improvement cannot afterward amend its order by including lands outside of said district. The point actually decided was that the board of supervisors of Sutter County had no power to establish a levee district in an adjoining county. The declaration made in that case seems to have no bearing upon the question before this court, and neither that nor the Davies case should prevail against the later decisions of the court above cited.

Section 12 of the ordinance provides that any property owner aggrieved at any assessment levied may commence an

action to contest his assessment, levied under the terms of the ordinance, but that such action must be begun within thirty days after the adoption of the resolution of the supervisors finally modifying and confirming the assessment reported by the board of public works. This action was begun under that authority. The plaintiff insists that in such an action he may review all the proceedings of the supervisors, including its determination as to the property benefited and the amount of benefits to be assessed.

Even if this were conceded, it must be also conceded that the determination of the supervisors is at least *prima facie* correct, and that it could not be set aside except upon evidence showing that the decision was not sustained by the facts existing. No evidence was offered or given to show that the particular lots not assessed for the improvement were in fact benefited thereby. In the absence of such evidence it is obvious that the decision of the supervisors could not be declared invalid.

[16] But we do not think the procedure ordinance intends or provides that in such action the plaintiff can inquire into the particulars of each assessment and have the court revise it and set it aside if it shall find that a different apportionment would be more just or equitable, or that some of the lots not assessed were benefited by the tunnel. The section does not so provide, and the circumstances and conditions forbid such implication from the mere provision that an action may be begun by any person aggrieved to contest the validity of his assessment. There were more than sixteen thousand parcels of land assessed. If the owner of each of these parcels could separately maintain an action and therein reopen the entire question of benefits received and the proportion to be charged against the respective parcels, it is plain that any proceeding of such magnitude, or even of far less extent, could, and probably would, be effectually blocked by unending litigation. Such construction is not to be indulged if it produces such absurd consequences.

The reasons above given also answer the objection urged in this connection that the assessment was not made according to the benefits. The determination of the supervisors is conclusive on that subject also. We find no ground on which these objections can be sustained.

[17]  6. There is no merit in the point that the ordinance must be held invalid because, after the first publication of the notice of the filing of the report of the board of public works with the supervisors, it allows the persons interested only twenty days' time within which to file a protest in the proceeding.  The argument is that where there are sixteen thousand parcels of land assessed, it cannot reasonably be supposed that all of the owners would receive knowledge of such filing and obtain access to the report for a sufficient period of time before the hearing to discover its defects or determine the grounds of the objections thereto.  It is not claimed that the plaintiff did not have sufficient time for this purpose.  In order to constitute the due process of law necessary to give jurisdiction of a proceeding of this character, the interested persons must have notice of the time and place of the hearing for a reasonable period before it is to be held.  (*Davies* v. *Los Angeles*, 86 Cal. 46, [24 Pac. 771].)  But we cannot say that the twenty days allowed by this ordinance is unreasonable.  In *Bellingham Bay etc. Co.* v. *New Whatcom*, 172 U. S. 319, [43 L. Ed. 460, 19 Sup. Ct. Rep. 205, see, also, Rose's U. S. Notes]), a local improvement case, the period was ten days after the first publication, and the court held that it could not be declared an unreasonably short time.  In this state there are many local improvement statutes in force, of similar character, in which the time of the notice prescribed to give jurisdiction varies from ten to twenty days.  In view of these numerous statutes, all of which have long been considered valid in this respect, it is obvious that twenty days cannot be said to be unreasonable.

7. Plaintiff urges that there was error at the trial in refusing to admit certain evidence offered by him.

A member of the board of public works was asked to state what rule that board adopted in apportioning the benefits in the district; whether he, personally, went upon the land to make the assessment; whether he took part in making the estimate of the benefits; whether the board had the land viewed by any person for its information, and what information the board had as to such benefits and from whom it was derived.  He was then asked to state why a different rate of assessment was placed upon different blocks which, it was claimed, were not assessed at the same amount.  These questions all related to the action of the board of public works in

making up its estimate prior to the filing of its report with the supervisors. [13] The authorities already cited, especially the quotations from *Duncan* v. *Ramish*, 142 Cal. 692, [76 Pac. 661], sufficiently answer the objections to the rulings excluding this evidence. They were incompetent as evidence to impeach the assessment finally made by the supervisors upon the hearing. The other objections to evidence are too trivial to deserve notice.

The judgment is affirmed.

Olney, J., Wilbur, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.