[S. F. No. 10474. In Bank.—February 19, 1925.]

MARY E. RUTLEDGE et al., Appellants, v. THE CITY OF EUREKA (a Municipal Corporation) et al., Respondents.

[1] APPEAL — FINDINGS—EVIDENCE.—On an appeal the evidence must be considered in its aspect most favorable to upholding the findings and judgment.

[2] STREET LAW—DISTRICT ASSESSMENTS—MAKING UP ASSESSMENT—EMPLOYMENT OF ASSISTANTS — VALIDITY OF.—Where property is being assessed under the district plan for street improvements, the employment by the superintendent of streets of a private individual to make estimates of the proper assessment to be charged against each lot, piece, or parcel of land in the assessment district, spreading the entire cost of the proceeding over the land in the district in accordance with his ideas of benefits, is not illegal, where such estimates are adopted by the superintendent of streets as his own and the latter makes the assessments accordingly and certifies thereto.

[3] ID.—PREPARATION OF ASSESSMENT—EMPLOYMENT OF ASSISTANT BY STREET SUPERINTENDENT — LACK OF AUTHORITY—IRREGULARITY—REMEDY.—Even if the employment by the superintendent of streets of an assistant to make up the assessments for street work under the district plan is unauthorized, such action would be a mere irregularity which would not affect the jurisdiction of the council, already acquired, to order the improvement nor invalidate any assessment for the cost of the work, and the exclusive remedy for attacking same, in the absence of fraud, is by appeal to the city council.

[4] ID. — DISREGARDING PROVISIONS OF STATUTE—JURISDICTION.—It is competent to provide in the street law itself that a disregard of its provisions not essential to confer jurisdiction on the city council to order street work may in turn be disregarded.

[5] ID.—MAKING ASSESSMENT — DISCRETION — WHEN CONCLUSIVE.—When a proper official has exercised his discretion and made an assessment for street improvement and the city council has on appeal confirmed the same, the matter is foreclosed in the absence of specific fraud on the part of the council.

[6] ID.—UNIFORM ASSESSMENT—EVIDENCE.—In order to set aside an assessment for street work on the ground that it is grossly unjust, the record on its face must furnish clear and convincing evidence

that under no conditions could the several parcels of land have been benefited in the proportion stated by the assessment.

[7] ID.—APPEAL—ABSENCE OF FRAUD—PRESUMPTION OF GOOD FAITH.—No actual fraud being alleged, it must be assumed that a city council exercised an honest discretion in determining appeals from street assessments, and it will not be' presumed that the evidence before the city council was not sufficient to support its conclusions.

[8] ID.—EXPENSE OF MAKING ASSESSMENT—SALARY OF SUPERINTENDENT OF STREETS—CONSTITUTION.—The inclusion in the assessment of a district for street improvement of an amount as compensation of private persons employed by the superintendent of streets to make up the assessment does not constitute an increase in the salary of the superintendent of streets in violation of section 9, of article XI, of the constitution.

[9] ID.—PUBLIC OFFICERS — COMPENSATION — TITLE 2, PART IV, OF POLITICAL CODE—CITY OFFICERS.—Title 2 of part IV of the Political Code, containing provisions for compensation of county officers, does not refer to nor is it applicable to city officers of whom a superintendent of streets is one.

[10] ID.—SECTION 9, ARTICLE XI, CONSTITUTION — INCREASE OF COMPENSATION.—One of the purposes of section 9 of article XI of the constitution was to prevent the possibility of an officer using the power and influence of his ·official position to obtain an increase of compensation after his election or during his term of office.

[11] ID.—ASSESSMENT OF RAILROAD PROPERTY.—In levying an assessment for street improvements in a certain district, a city has authority to assess railroad property situated in the district which is used as a part of the general system of the railroad, where the method is the same as that employed in assessing other lands in the district.

[12] ID.—TORRENS LAND TITLE LAW — FILING NOTICE OF ORDER FOR STREET WORK.—Under section 94 of the Torrens Land Title Law (Stats. 1915, p. 1932), it is the resolution ordering street work by the city council, and not the resolution of intention, notice of the passage of which is required to be filed in the registrar's office.

[13] ID.—FILING OF MEMORIAL OF LIENS. — Section 95 of the Torrens Land Title Law providing that no statutory or other lien shall

8. See 21 Cal. Jur. 956.

11. Special assessment of railroad right of way for street improvement, notes, 2 Ann. Cas. 587; 12 Ann. Cas. 635; Ann. Cas. 1916E, 579; 12 L. R. A. (N. S.) 112; 40 L. R. A. (N. S.) 935.

be deemed to affect the title to registered land until after a memorial thereof is entered upon the register, as therein provided, applies only to the memorial of statutory or other liens elsewhere mentioned in the act, and does not apply to the memorial of the passage of either a resolution of intention to do street work or one ordering the work, which could not create a lien on the property, either registered under the Torrens Land Title Law or not so registered.

[14] ID. — CONSTRUCTION OF TORRENS LAND TITLE LAW—EFFECT OF STREET IMPROVEMENT ACT.—It cannot be assumed that in the enactment of the Torrens Land Title Law it was intended that the provisions of section 94 thereof, requiring notice of street work to be filed in the registrar's office within a certain time, should repeal or abrogate or affect in any way the declaration of section 7 of the Street Improvement Act of 1911 (Stats. 1911, p. 730), to the effect that when certain steps have been taken the city council shall be deemed to have acquired jurisdiction to order the work.

[15] ID.—TORRENS LAND TITLE LAW—FILING NOTICE OF STREET WORK —JURISDICTION. — The filing of notice under the Torrens Land Title Law of the passing of an ordinance, resolution, or order by a city council for street work, within five days after its passage, is not jurisdictional nor mandatory, but is directory, and the filing of such notice before the recording of the assessment for street work is a sufficient compliance with the requirements of that section.

[16] ID.—WORDS AND PHRASES—"MUST."—The use of the word "must" is not necessarily determinative of its mandatory import; the words "shall" and "must" are frequently considered as directory terms.

[17] ID.—INJUNCTION TO PREVENT BOND ISSUE—EVIDENCE — ASSESS-MENT-ROLL.—In suits to enjoin a city and its officers from issuing bonds to represent certain special assessments in a street improvement proceeding, it was proper to receive the assessment-roll in evidence in order that the court might determine whether the assessments were so arbitrary and discriminatory on the face thereof as to amount to a constructive fraud on the plaintiffs.

[18] ID.—ASSESSED VALUE OF PROPERTY—DISCRIMINATION IN ASSESS-MENTS—EVIDENCE.—In such cases there was no error in sustaining objection to evidence proffered by plaintiffs as to the assessed value of certain of their properties and properties in the business district claimed to have been favored, for the declared purpose of proving inequality and discrimination in the assessments, for in so far as such evidence might have a bearing upon the question of benefits the determination of the city council was conclusive, and

in so far as it related to the charge of constructive fraud, the conditions shown by the record or coming within judicial knowledge must furnish the basis of interference by the courts.

(1) 4 C. J., p. 777, n. 61, p. 786, n. 31; 28 Cyc., p. 1189, n. 57. (2) 23 C. J., p. 59, n. 22; 28 Cyc., p. 1141, n. 17, p. 1166, n. 58 New.  (3) 28 Cyc., p. 1170, n. 87, p. 1187, n. 30; 36 Cyc., p. 1221, n. 33.  (4) 28 Cyc., p. 1170, n. 87.  (5) 28 Cyc., p. 1178, n. 50. (6) 28 Cyc., p. 1190, n. 58.  (7) 28 Cyc., p. 1189, n. 57.  (8) 28 Cyc., p. 1153, n. 45.  (9) 28 Cyc., p. 449, n. 52.  (10) 28 Cyc., p. 457, n. 20.  (11) 28 Cyc., p. 1118, n. 79.  (12) 28 Cyc., p. 981, n. 56; 31 Cyc., p. 714, n. 55.  (13) 28 Cyc., p. 981, n. 56.  (14) 28 Cyc., p. 941, n. 16.  (15) 28 Cyc., p. 1008, n. 63 New.  (16) 36 Cyc., p. 1161, n. 39, 40.  (17) 28 Cyc., p. 1190, n. 58 New.  (18) 28 Cyc., p. 1178, n. 50, p. 1190, n. 58 New.

APPEAL from a judgment of the Superior Court of Humboldt County.  C. O. Busick, Judge.  Affirmed.

The facts are stated in the opinion of the court.

F. A. Cutler, J. F. Coonan, J. M. Mannon, Jr., J. H. G. Weaver and Mahan & Mahan for Appellants.

Alfred C. Skaife, Guy Le Roy Stevick and Arthur M. Ellis for Respondent Citizens' National Bank of Los Angeles.

James W. Henderson for Respondents City of Eureka and Officials thereof.

Kirkbride & Gordon, Jess E. Stephens, City Attorney, Lucius P. Green, Chief Deputy County Counsel, Edward T. Bishop, County Counsel, and Everett W. Mattoon, Deputy County Counsel, *Amici Curiae,* for Respondents.

SHENK, J.—Ten complaints were filed by the plaintiffs and appellants in the superior court in and for the county of Humboldt to enjoin the respondent City of Eureka and its officers from issuing bonds to represent certain special assessments in a street improvement proceeding.  The actions were consolidated and tried together.  Findings of fact and conclusions of law in favor of the defendants and respondents were signed and filed by the trial court and from a judgment entered in accordance therewith the plaintiffs

have appealed. The record is presented pursuant to sections 953a et seq. of the Code of Civil Procedure.

The street improvement proceeding was initiated by the adoption on the twentieth day of May, 1919, of an ordinance of intention to order certain improvements to be made and work performed in said city pursuant to the improvement act of 1911 (Stats. 1911, p. 730) and amendments thereto. As therein contemplated the work was to consist, among other things, of grading, paving and the construction of culverts, sanitary sewers, and storm sewers. The improvement was to extend from the southerly limits of the city along Broadway, Highway Avenue, and Fourth Street to the northerly city limits. No improvement, however, was to be constructed on Fourth Street between E and H Streets. The council declared and determined that the proposed improvement would be of more than local or ordinary public benefit and prescribed a district deemed to be benefited thereby, which district covered practically the entire city of Eureka. It also gave notice that serial bonds would be issued to represent unpaid assessments pursuant to the Improvement Bond Act of 1915 (Stats. 1915, p. 1441). Following the adoption of the resolution of intention all of the steps necessary to enable the council to acquire jurisdiction to order the work were admittedly duly taken. The contract was let to the Worswick Construction Company, the work was performed by that company in accordance with the requirements of the contract and was approved and accepted by the city. To this point the appellants make no objections to any of the proceedings under said improvement laws. Thereafter an assessment was made to cover the cost of the work, and on June 9, 1921, the said assessment together with the warrant were recorded in the office of the superintendent of streets and the diagram was there filed.

It is contended by appellants that the assessment so made and recorded was not the assessment of the superintendent of streets as required by the Improvement Act, and was therefore void because of the alleged unlawful delegation of authority by the superintendent of streets to one A. J. Larson, of the firm of Endicott & Larson, in connection with the making of the assessment. It appears that on or about the sixteenth day of September, 1920, the superintendent of streets entered into a contract with Endicott & Larson

to make up the assessment and the contractor's return and to furnish all necessary records and bonds, all for one per cent of the contract price. When the improvement contract had been completed and the work accepted the said Larson proceeded to and did make his estimate of the proper assessment to be charged against each lot, piece, or parcel of land in the assessment district, spreading the entire cost of the proceeding over the land in the district in accordance with his ideas of benefits. These estimates he delivered to the superintendent of streets, who thereafter adopted the same as his own and made the assessment accordingly.

The superintendent of streets certified, among other things, as follows: "Pursuant to and in accordance with the statute, I, W. H. Colwell, street superintendent of the City of Eureka, do hereby certify that that certain contract entered into between Worswick Construction Company and myself as the street superintendent of said city, on the 25th day of July, 1919, for the grading, paving, constructing sanitary sewers, storm sewers, catch basin laterals, culverts, curbs, shoulders, ditches, bulkheads, manholes, lamp hole survey monuments, storm water inlets and filling in said streets above set forth in said City of Eureka, has been fulfilled and performed to my satisfaction as such street superintendent, and I have accepted the work contracted for, and I have estimated upon the land, lots or portions of lots, within the said assessment district, described in said resolution of intention and shown upon the diagram herewith attached prepared by the city engineer and approved by the city council, the benefits arising from the work performed under said contract, and to be received by each lot, portion of such lot, piece or subdivision of land within said district in the manner provided by law, and as such street superintendent I do hereby assess upon and against said lands in said assessment district the sum of three hundred twenty-nine thousand and fifty-three & 54/100 dollars ($329,053.54), that sum being the total amount of the costs and expenses of said work done under said contract and the sum due for the work performed and specified in said contract (including incidental expenses), to-wit: By amount to be paid under said contract $303,823.54; And the amount of incidental expenses incurred as provided by law, $25,230.00, Making a total of $392,053.54 . . . as follows: (Here fol-

lows in tabulated form itemized cost of the several classes of work.) And I do hereby assess such total sum of $329,053.54 upon the several pieces, parcels, lots, portions of lots and subdivisions of land in said district, benefited thereby, to-wit: upon each respectively in proportion to the said estimated benefits to be received by each of said several lots, portions of lots or subdivisions of land, . . . as follows'': (Here follows descriptions of some thirteen thousand parcels of land with a separate number opposite each description and the amount of assessment charged against each.) To this certificate and assessment is appended the signature of W. H. Colwell, street superintendent of the City of Eureka, dated Eureka, California, May 12, 1921. The assessment was duly recorded in the office of the superintendent of streets on May 12, 1921. On the same day the superintendent of streets signed a warrant to the assignee of the contractor to demand and receive the several assessments and recorded the same in his office.

The allegations of the several complaints are substantially in accord, and it is there averred ''That said superintendent of streets did not upon or after the delivery to him of said diagram or any time make said assessment in conformity with the provisions of section 20, subdivision 10, of the said street improvement act of 1911 and the amendments thereto, but said assessment was previously made by one Larson and was delivered at the time and date of the delivery of said diagram to said superintendent of streets; that in making said assessment said Larson intruded upon and usurped the duties of said office of superintendent of streets of the city of Eureka, and in making said assessments said Larson did not consult, advise or co-operate with said Colwell, but at all times in making such assessment exercised his own judgment and discretion independent of and without the knowledge, consent or acquiescence of said Colwell; that all of said acts and proceedings were had and done by said Larson willfully, knowingly and perpetrated a fraud upon these plaintiffs and each one of them in that each plaintiff as the owner of land within said assessment district was and is entitled to have the official elected by the electors of said city of Eureka and as the official designated by law to use and exercise his judgment and discretion in making said assessments.''

Pursuant to issue joined on the foregoing allegations and the affirmative averments of the answers of the defendants the court found as follows: "That on or about the 15th day of August, 1920, the superintendent of streets of said city of Eureka entered into a contract with Endicott and Larson, a copartnership, wherein and whereby the said Endicott and Larson agreed to do and perform the work of making up and furnishing an assessment roll of and for the aforesaid work, and to compute and estimate the assessment for the aforesaid work on each lot, piece, parcel and subdivision of land within the aforesaid assessment district. . . . That said diagram so prepared by said engineer as aforesaid was on the 3rd day of May, 1921, duly approved by the council of said City of Eureka and certified by the city clerk of said city and that the said diagram as the same was prepared by said city engineer, approved by said city council and certified by said city clerk was delivered to said superintendent of streets and said Endicott and Larson . . . did proceed to compute and estimate, and did compute and estimate upon and against the lots, lands, portions of lots, pieces, parcels and subdivisions of land within said assessment district as shown on said diagram, the benefits arising from the aforesaid work, and to be received by each such lot, piece and parcel and subdivision of land, and in making up said assessment pursuant to said agreement did thereupon apportion upon and against said land in said assessment district, the total amount of the cost and expense of the aforesaid work, and in making up said assessment pursuant to said agreement did apportion the total cost and expense of the aforesaid work upon the several pieces, parcels, lots, portions of lots and subdivisions of land in said assessment district benefited by the aforesaid work, to-wit: Upon each respectively in proportion to the estimated benefits to be received by each of said several lots, portions of lots and subdivisions of land. . . . That on the 12th day of May, 1921, such superintendent of streets, in his official capacity, did adopt the assessment so made by Endicott and Larson pursuant to said agreement as the assessment in said proceeding, and did sign said assessment in his official capacity and did attach thereto a warrant, which warrant was in the form provided by said 'Improvement Act of 1911,' that said warrant was signed by the superintendent of streets

and countersigned by the mayor of the City of Eureka and that said warrant, said diagram and said assessment together with a certificate, prepared and signed by said city engineer, showing the quantity and character of the aforesaid work done, was on the 12th day of May, 1921, duly recorded in the office of the superintendent of streets of the City of Eureka. That in said assessment said W. H. Colwell as superintendent of streets of the City of Eureka did certify, pursuant to and in accordance with the Improvement Act of 1911, that the contract entered into between the Worswick Construction Company and W. H. Colwell as street superintendent of said City of Eureka, on the 25th day of July, 1919, for the work provided in said resolution of intention No. 113 had been fulfilled and performed to his satisfaction as such street superintendent, that he had accepted the work contracted for, that he had estimated upon the land, lots or portions of lots within the said assessment district described in said resolution of intention and shown upon the diagram attached to said assessment prepared by the city engineer and approved by the city council, the benefits arising from the work performed under said contract and to be received by each lot, portion of such lot, pieces or subdivisions of land within said district in the manner provided by law. In said assessment said W. H. Colwell as such street superintendent did declare that he did then and thereby assess upon and against said lands in said assessment district the total amount of the cost and expense on said work done on said contract, being the sum due for the work performed and specified in said contract including incidental expenses, and did further declare in said assessment that he did thereby assess such total sum upon the several pieces, parcels, lots and subdivisions of land in said district benefited by said work, to-wit, upon each respectively in proportion to the said estimated benefits to be received by each of said several lots, portions of lots or subdivisions of land. . . . That it is not true that said superintendent of streets did not upon, or after the delivery to him of said diagram, or at any time make said assessment in conformity with the provisions of section 20, subdivision 10, of said Improvement Act of 1911, and the amendments thereto, nor that said assessment was previously made by one Larson or was delivered at the time or date of the delivery

of said diagram to said superintendent of streets, nor that in making said assessment, said Larson intruded upon and usurped the duties of said office of superintendent of streets of the said City of Eureka, nor that in making said assessment said Larson did not consult or advise or co-operate with said Colwell or that at all times in making said assessment said Larson exercised his own judgment or discretion independent of, or without the knowledge, consent or acquiescence of said Colwell nor that all or any of said acts or proceedings . . . perpetrated a, or any fraud upon said plaintiffs, or each of them, or any of them. : . . ''

[1] The foregoing findings were supported by the evidence. The testimony of the superintendent of streets was somewhat equivocal, but we are required on appeal to consider the evidence in its aspect most favorable to upholding the findings and judgment (*Breese* v. *Brooks,* 97 Cal. 72 [22 L. R. A. 257, 31 Pac. 742]; *Paine* v. *San Bernardino, etc. Co.,* 143 Cal. 654 [77 Pac. 659]; *Estate of Hill,* 167 Cal. 59 [138 Pac. 690]). When so considered his testimony was that when he signed the certificate and warrant he signed the same in his official capacity as superintendent of streets, that he knew the contents of the assessment-roll, and intended when he signed the certificate that the assessments therein provided for should be the assessments for the work described. This formal record of the official action of the superintendent of streets under the circumstances here shown was sufficient upon which to base the findings of the court.

[2] It is earnestly insisted, however, that even the facts as found disclose an unlawful delegation of authority to Endicott & Larson by the superintendent of streets arising from the contract of employment. Numerous cases are cited wherein improvement proceedings have been held invalid because of an unlawful or unauthorized delegation of authority. It is deemed unnecessary to review them for the reason that in those cases discretionary power to act finally on the subject was placed or was attempted to be placed out of the hands of those in whom the law vested the power to act and into the hands of the person to whom the authority was delegated. Here the superintendent of streets actually exercised the power conferred upon him by the statute to make the assessment. While the correspondence between Endicott & Larson and the superintendent of streets shows that the

former offered among other things "to make and record
the assessment" for the stipulated price and the offer in
that form was accepted by the superintendent of streets, it is
plain from what was done under the agreement that it was
intended by the parties that the work of Endicott & Lar-
son was to "make up" or prepare an assessment for the
assistance and advice of the superintendent of streets. No
case has been cited which would operate to prevent the fur-
nishing of assistance to the superintendent of streets in the
performance of such work. It is apparent that the task
of preparing the assessment here involved would have been
impossible on the part of the respondent superintendent of
streets without assistance. It is a matter of common knowl-
edge that in large cities where street improvements are car-
ried on extensively the work here performed by Larson is
done by an assistant skilled in the work in the office of the
superintendent of streets or of the lawfully constituted
board, commission, or officer exercising his functions. In
such circumstances it has never been held, as far as we are
aware, that the superintendent of streets or the board, com-
mission, or officer acting lawfully in his stead has relin-
quished or delegated the statutory power to make the assess-
ment when it appeared, as it does in this case, that the power
to act officially was not delegated or relinquished and the
act required to be done by the statutory officer was actu-
ally performed by him. When the superintendent of streets
signed the certificate to the assessment-roll he adopted the
work of Larson as his own. (See *Witter* v. *Bachman,* 117
Cal. 318 [49 Pac. 202].) And having made and authenti-
cated the assessment in his official capacity, it would not
be competent for the superintendent of streets to repudiate
it. .(*Hadley* v. *Dague,* 130 Cal. 207, 215 [65 Pac. 500].)

[3]   We entertain no doubt that it would be within the
power of the legislature to authorize the street superinten-
dent to employ persons to assist him in preparing the assess-
ment. Assuming that he did so in this case without express
statutory authority, such action would be a mere irregularity
which would not affect the jurisdiction of the council, al-
ready acquired, to order the improvement nor invalidate
any assessment for the cost of the work, under section 26
of the Improvement Act, which provides that "no assess-
ment . . . and no proceedings prior to the assessment, shall

be held invalid by any court for any error, informality, or other defect in the same, where the resolution of intention of the council to do the work, has been actually published as herein provided, and said notices of improvement have been posted along the line of the work, as provided by section five of this act, before the passage of the resolution ordering the work to be done." The constitutional and statutory requirements were complied with and the exclusive remedy of the appellants, in the absence of fraud, and none is here shown, was by appeal to the council as declared in section 82 of the act. Appeals were so taken by the appellants, and after hearings before the council extending over a period of approximately three weeks the objections of the appellants were overruled and the assessments confirmed. Said section 82 provides: "This act shall be liberally construed to the end that its purposes may be effected. No error, irregularity, informality, and no neglect or omission of any officer of the city, in any procedure taken hereunder, which does not directly affect the jurisdiction of the city council to order the improvement, shall avoid or invalidate such proceedings or any assessment for the cost of the work done thereunder. The exclusive remedy of any person affected or aggrieved thereby shall be by appeal to the city council as herein provided." This is a most comprehensive curative provision. It is more than a curative act. A curative act is retrospective. Here the same statute which prescribes certain requirements provides that failure to comply with such requirements shall not avoid the assessment. [4] It is competent to provide in the law itself that a disregard of the provisions not essential to confer jurisdiction on the council to order the work may in turn be disregarded. (*Chase* v. *Trout,* 146 Cal. 350 [80 Pac. 81]; *Imperial Land Co.* v. *Imperial Irr. Dist.,* 173 Cal. 660 [161 Pac. 113]; *Bienfield* v. *Van Ness,* 176 Cal. 585 [169 Pac. 225]; *Oakland Pav. Co.* v. *Whittell Realty Co.,* 185 Cal. 113 [195 Pac. 1058]; *City Street Imp. Co.* v. *Watson,* 50 Cal. App. 687 [195 Pac. 967]. See, also, *Watkinson* v. *Vaughn,* 182 Cal. 55 [186 Pac. 753].)

It is contended that the assessments charged against the lands of the appellants are unjust, arbitrary, and discriminatory and deprive them of their property without due process of law and deny to them the equal protection of the law.

In this connection it is alleged that a plan of assessment was adopted not based upon the use, status, value, or location of the said lots and land as affected by the benefit received from said improvements; that the benefit plan as prescribed by the statute was not followed; that unimproved land, residential property, and land fronting on Fourth Street and Broadway (except the land fronting on Fourth Street between E and H Streets and the land of the appellant railroad company) were overassessed and twenty-six blocks in the business district were underassessed "in pursuance of an unlawful and fraudulent scheme in order that credit might and should be given to the property within said business district." These allegations were denied by the answers and the court found the allegations to be untrue. [5] The appellants concede that it is well settled that when a proper official has exercised his discretion and made the assessment and the council has on appeal confirmed the same, the matter is foreclosed in the absence of specific fraud on the part of the council. But it is urged that the law in such cases is confined to the consideration of isolated assessments where it is claimed on the part of the property owner appealing to the city council that the assessment upon his particular lot exceeds the benefit conferred upon that particular piece of land and that it does not apply to a case where, as it is claimed it appears in this case, a scheme of assessment was willfully and designedly adopted whereby an entire section of the district was preferred to the detriment of the balance of the district. The finding of the trial court was against the allegations and contentions of the appellants on this point, but notwithstanding such finding it is insisted that the assessment is so unequal on its face as to render it invalid. It is urged that the record herein brings the case within the ruling of *Spring Street Co.* v. *City of Los Angeles,* 170 Cal. 31 [L. R. A. 1918E, 197, 148 Pac. 217], wherein it was held that the assessment might be so manifestly and so grossly unjust upon its face as to justify the court in setting it aside despite the decision of the council on appeal. [6] But in order to set aside an assessment on the authority of that case the record on its face must furnish clear and convincing evidence that under no conditions could the several parcels of land have been benefited in the proportion stated by the assessment (*Cutting* v. *Vaughn,* 182 Cal. 151 [187

Pac. 19]). The entire record is before us, including the
assessment and diagram. It is voluminous and has been ex-
amined with care. An inspection thereof shows that certain
properties in the so-called business district of the city were
assessed at sums less than and greatly disproportionate to the
assessment of property in other sections of the city, and at
first glance it would seem that this property had been unduly
favored in the making of the assessment. But counsel for
the respondents has stated, and it is not denied by the ap-
pellants, that the portion of the district alleged to be so
favored is adjacent to that part of Fourth Street between
E and H Streets which had theretofore been graded and
paved. This fact also appears on the face of the record
and furnishes some explanation why the property in that
particular vicinity was not assessed at a greater amount.
[7] No actual fraud is alleged and it must be assumed that
the city council exercised an honest discretion in determin-
ing the appeals. It will not be presumed that the evidence
before the city council was not sufficient to support its con-
clusions. (*Rockbridge Place Co.* v. *City Council*, 178 Cal.
58 [172 Pac. 1110].) It is conceivable that the city council
might have determined that the assessment as to the appel-
lants' property and the assessment on said portion of the
business district were not disproportionate as to benefits re-
ceived for the reason that the business property in question
had theretofore been assessed to pay the cost of the grad-
ing and paving on Fourth Street between E and H Streets.
It must be conceded that reasonable minds might differ as
to the extent of benefits received by the particular business
property referred to and that a much higher assessment on
this property could have been made, but from an examina-
tion of the entire record and the circumstances as disclosed
by the respondents, it cannot be said that there was no rea-
sonable ground upon which the council might conclude that
the assessments which were actually made were not unjust
or discriminatory.

[8] It is contended that the inclusion in the assessment
of the item of $3,033.23 as the compensation of Endicott &
Larson was an improper item and not chargeable to the
assessment district, in that it would in effect constitute an
increase in the . salary of the superintendent of streets in
violation of section 9 of article XI of the constitution. The

amount referred to was the contract price at which Endicott & Larson performed their work and was included in the assessment as an incidental expense. The third paragraph of section 79 of the act defines "incidental expenses." Many items are included, among which is found "the expenses of making the assessment for any work authorized by this act." The statute contemplates that costs and expenses will accrue in addition to the contract price and makes provision for payment thereof. By the terms of section 42 of the act the superintendent of streets is authorized to employ inspectors to take charge and superintend the construction of the work and to report to him any departure from the requirements of the contract. Payment for such inspection and superintendence is provided for and included in the cost of the work as an incidental expense. Under the improvement act all work must be done under the direction and to the satisfaction of the superintendent of streets. It is his official duty to see that the work is so done and performed. Obviously it would be impossible in many instances for him to do so personally. In contemplation of that fact the statute provides for his assistance by the appointment of inspectors. It may not be said that payment for these services under such circumstances would operate in such manner as to increase the salary of the superintendent of streets in violation of section 9 of article XI of the constitution. Such a holding would in some instances render the act inoperative and defeat its purposes. The same reason would seem to apply to the employment of assistance in the preparation of the assessment-roll. Section 18 of the act authorizes the superintendent of streets to enter into all written contracts provided for in the act and to do all other things that expressly or impliedly pertain to the street department under the act. Because of the magnitude of the task in preparing the assessment-roll here involved the need of assistance is apparent and the employment of persons for that purpose would reasonably be necessary to accomplish the purposes of the act.

The appellants rely on the case of *Forward* v. *County of San Diego,* 189 Cal. 704 [209 Pac. 993], in support of the contention that the allowance of compensation to Endicott & Larson would be an increase in the compensation of the superintendent of streets in contravention of section 9

of article XI of the constitution. It was there held that
section 4041b of the Political Code, enacted in 1919, and
providing that a county board of supervisors in its discretion
should have the power to appoint an advisory board to co-
operate with the county assessor in making the annual as-
sessment of real property and providing for the compensa-
tion of the members of the board from the county treasury,
was unconstitutional in that the effect of the section would
be to increase the compensation of the county assessor dur-
ing his term of office. In that case emphasis was placed on
the provisions of section 4290 of the Political Code, which
provides that the salaries and fees fixed in the title of that
code of which section 4290 is a part shall be in full compen-
sation for all services of any kind or description rendered
by the officers named in said title either by the officers them-
selves or by their deputies or assistants. [9] The title re-
ferred to is title 2 of part IV of the Political Code
and contains provisions for compensation of county officers.
Those provisions do not refer to nor are they applicable to
city officers of whom the respondent superintendent of streets
is one. [10] One of the purposes of section 9 of article
XI was to prevent the possibility of an officer using the power
and influence of his official position to obtain an increase of
compensation after his election or during his term of office.
(*Harrison* v. *Colgan,* 148 Cal. 69 [82 Pac. 674].) It may
also be said that this section was designed to prevent
unwarranted demands upon the public treasury resulting
from a possible concert of action between public officers or
expectant candidates for public office. But in a street pro-
ceeding such as the one with which we are here concerned
the public funds are in nowise involved. The city acts
merely as the agent of the property owners of the district
and the city treasury is not required by the statute to bear
any portion of the cost of the work. When a statute has
imposed a special burden upon the superintendent of streets
which is impossible of performance by him without assis-
tance it seems clear that it was contemplated that such as-
sistance be available to him, especially when the cost thereof
is not a charge upon the public funds. To hold that section
9 of article XI would prohibit the employment of such as-
sistance would not further the purpose of that section but

would thwart the objects and purposes of the improvement act.

[11] On behalf of the appellant Northwestern Pacific Railroad Company it is contended that it is a common carrier with a total track mileage of 640 miles; that it passes through the City of Eureka within the assessment district and has approximately four miles of main-line track, connected with depot grounds, freight and round houses, side-tracks, etc., in the city, all used as a part of the general system. It is urged that there is no rational basis for an assessment upon the property within the district to the extent of $13,418.29, which was 'the amount of its assessment. It is declared in subdivision 11 of section 20 of the Improvement Act that: "The terms, lot, lands, piece or parcel of land wherever mentioned in this act shall be deemed to include and shall include property owned or controlled by any person, firm or corporation as a railroad, street or interurban railroad right of way, and whenever a railroad, street or interurban railroad right of way shall front on or abut or parallel or be included within or divide . . . any district to be assessed for the cost of any improvement provided in this act, such railroad right of way (whether the same is owned in fee or as an easement) shall be included in the warrant, assessment and diagram and shall be assessed in the manner and with the same effect as other lots, lands or pieces or parcels of land are assessed as provided in this act." The appellants rely upon the case of *Kansas City Southern Ry. Co.* v. *Road Improvement Dist.*, 256 U. S. 658 [65 L. Ed. 1151, 41 Sup. Ct. Rep. 604, see, also, Rose's U. S. Notes Supp.], involving an assessment of railroad property in a road improvement district. It was held in that case that the particular assessment under attack was invalid, for the reason that the amount thereof was arrived at "apparently according to some vague speculation as to present worth and possible future increased receipts from freight and passengers which would enhance its value, considered as a component part of the system," and not according to area and position as other property in the district was assessed. It was further said that "railroad property may not be burdened with local improvements on a basis so wholly different from that used for ascertaining the contribution demanded of individual owners as necessary to pro-

duce manifest inequality." But in the case at bar it does not appear that any different method was employed in arriving at the assessment of the railroad property from that adopted in assessing other lands in the district. The right of the legislature to provide for the assessment of railroad property has been recognized (see *McNeil* v. *South Pasadena,* 166 Cal. 153 (48 L. R. A. (N. S.) 138, 135 Pac. 32]), and such assessments have been upheld in other jurisdictions (*Louisville & N. R. R. Co.* v. *Barber Asphalt Pav. Co.,* 197 U. S. 430 [49 L. Ed. 819, 25 Sup. Ct. Rep. 466, see, also, Rose's U. S. Notes]; *Grand Rapids* v. *Railway System,* 214 Mich. 1 [182 N. W. 424]; *Northern Pac. R. Co.* v. *Seattle,* 46 Wash. 674 [123 Am. St. Rep. 955, 12 L. R. A. (N. S.) 121, 91 Pac. 244]; *Des Moines City Ry. Co.* v. *City,* 183 Iowa, 1261 [L. R. A. 1918D, 839, 159 N. W. 450, 165 N. W. 398]; *Heman Constr. Co.* v. *Wabash R. R.,* 206 Mo. 172 [121 Am. St. Rep. 649, 12 Ann. Cas. 630, 12 L. R. A. (N. S.) 112, 104 S. W. 67]; *Superior* v. *Lake Superior T. & T. R. Co.,* 152 Wis. 389 [140 N. W. 26]; *Georgia Ry. & E. Co.* v. *Atlanta,* 144 Ga. 722 [87 S. E. 1058]; *Chicago, M. & St. P. R. Co.* v. *Milwaukee,* 148 Wis. 39 [133 N. W. 1120]). Full authority exists for the assessment of this railroad property and the objection to the assessments here complained of are not well taken.

[12]    Some of the appellants own or have an interest in certain lands in Clark's South Park Addition, included within the assessment district, and which, prior to said improvement proceeding and at all of the times involved therein, were registered under the Torrens Land Title Law (Stats. 1915, p. 1932). It is their contention that said assessment has never become effective and is void as to those lands because of the failure of the clerk of the council to file in the office of the registrar a notice of the passage of the resolution ordering the work within five days after the passage thereof. This contention is based on sections 94 and 95 of the Land Title Law. Section 94 provides: "When in any city, town, or county, an ordinance, resolution, or order is passed or made, to lay out, establish, alter, widen, grade, regrade, relocate, or construct or repair a street, sidewalk, drain, or sewer, or to make any other public improvement, or to do any work, the whole or a portion of the expense for which assessments may be made upon real

estate, if any registered land or any land included in an application for registration then pending is affected by the act or proceeding and liable to such assessment, the clerk of the board passing such ordinance, resolution, or order must, within five days after the passage of such ordinance, resolution, or order, file in the registrar's office a notice of the passage thereof, and a memorial must thereupon be noted on the register. In case of the repeal of such ordinance, resolution, or order, the clerk of said board, and in case of the satisfaction of any lien thereunder, the superintendent of streets or other officer required by law to collect and receive such assessments, must within five days thereafter, notify the registrar, in writing, who shall thereupon cancel such memorial.'' The complaints allege that ''no copy of said resolution of intention No. 113 was filed in the recorder's office'' within five days after its passage as required by sections 94 and 95 of said act. It is not alleged that such a notice was not filed within five days after the passage of the resolution ordering the work. The appellants who are attacking the assessment on this ground evidently at first construed section 94 to require the filing of the notice within five days after the passage of the resolution of intention. But it is obvious from the wording of the section that the resolution ordering the work is the resolution referred to. While the issue tendered by these appellants on the question of the effect of want of notice of the passage of the resolution ordering the work is apparently insufficient the respondents allege that in May, 1921, and prior to the making, issuing, or recording the assessment, warrant and diagram, the clerk duly filed in the office of the registrar ''a notice of the passage of the resolution or order to make the public improvement described in plaintiffs' complaint'' and that said registrar did thereupon make the notation on the certificate of each of the several lots involved. The court found: ''That neither within five days after the passage by said city council of said resolution of intention No. 113, nor within five days after the passage of said resolution No. 1075 ordering said street work, did the clerk of said city council of the City of Eureka file in the said registrar's office a notice of the passage of said resolutions or either of them. That on the 7th day of May, 1921, and prior to the making, filing and recording of the assessment, warrant and

diagram in said proceeding and prior to the accrual of the lien of the assessments herein the said clerk of said city council did file within the office of said registrar a notice of the passage of said resolutions and each of them. That on the 7th day of May, 1921, the said registrar noted on each of the registers of all the said properties in Clark's South Park Addition to the City of Eureka a memorial of said notice." Because of the allegations in the answers of the respondents and the finding of the court the issue will be deemed sufficiently raised for the purpose of determining the point.

It is the contention of these appellants that the filing of the notice by the clerk in the office of the registrar is jurisdictional and mandatory, especially, in view of the language of section 95 of the act, which reads as follows: "No statutory or other lien shall be deemed to affect the title to registered land until after a memorial thereof is entered upon the register as herein provided." It is to be noted that section 95 does not refer to the memorial of the passage of any ordinance, resolution, or order referred to in section 94, but only to the memorial of a *statutory or other lien* which shall not be deemed to affect the title to registered land until after a *memorial thereof* is entered *as herein provided.* The words last italicized cannot be said to refer to the memorial of the passage of the resolution either of intention or of ordering the work, for such a memorial would not refer to a statutory or other lien. No assessment lien has attached under the Improvement Act prior to the expiration of the five-day period, and may never attach for numerous reasons arising during the course of the proceeding and prior to the recording of the assessment, warrant, and diagram in the office of the superintendent of streets. Until such recording takes place the lien does not attach under section 23 of the Improvement Act. Likewise, the words "as herein provided" do not refer to the entry of a memorial of a statutory or other lien provided for in said section 95 itself, for none is there provided for, but must refer only to the entry of a memorial of a statutory or other lien as elsewhere provided in the Land Title Act. A reference to other sections of the act shows what liens might be referred to. Section 59 provides for the registration of mortgages, leases, contracts to sell, and other instruments intended to create a lien. Section 91 pro-

vides how judgments, decrees, and other orders of court may become a lien. Section 92 provides how writs of attachment may become liens. Section 93 provides how mechanics' liens may become effective as to registered land. [13] A careful reading of the act discloses that section 95 applies only to the memorial of statutory or other liens elsewhere mentioned in the act and does not apply to the memorial of the passage of the resolution in question which could not create a lien on property, either registered under the Land Title Law or not so registered.

Since section 95 has no reference to anything contained in section 94, what, then, was the effect of the failure of the clerk of the respondent city council to file in the office of the registrar a notice of the passage of the resolution ordering the work within five days after its passage? [14] It cannot be assumed that in the enactment of the Land Title Law it was intended that the provisions of section 94 thereof should repeal or abrogate or affect in any way the declaration of section 7 of the Improvement Act to the effect that when certain steps had been taken, and which admittedly were all taken in the present proceeding, the council should be deemed to have acquired jurisdiction to order the work. In fact, all of the constitutional requirements necessary to vest in the council jurisdiction to order the work have taken place before the adoption of the resolution ordering the work. [15] The filing of the notice is therefore not jurisdictional. If the purpose of the filing was to apprise the owner of registered land that an assessment was about to become a charge upon his property that purpose would be accomplished if the notice be filed before the recording of the assessment in the office of the superintendent of streets. The omission of the clerk here complained of was not an entire failure to file the notice but a failure to file the same within the five-day period. There is no declaration in the section that its language is mandatory. [16] The use of the word "must" is not necessarily determinative of its mandatory import. The words "shall" and "must" are frequently construed as directory terms. (*Cake* v. *City of Los Angeles*, 164 Cal. 705 [130 Pac. 723]; *People ex rel. Thompson* v. *San Bernardino High School Dist.*, 62 Cal. App. 67 [216 Pac. 959].) There are in the section no negative words forbidding the filing of the notice after the time fixed. Nor is there lan-

guage importing an intention to withdraw power to enforce the assessment following a belated notice. Nor is any right of the property owner shown to be lost or impaired by the failure to file the notice in time. Under such circumstances it is proper to construe the time requirement to be directory (*Cake* v. *City of Los Angeles, supra*). This conclusion is fortified by a consideration of other provisions of the Land Title Law. It is provided in section 34 that "the registered owner of any estate or interest in land brought under this act shall . . . hold the same subject only to such estates, mortgages, liens, charges, and interests as may be noted in the last certificate of title in the registrar's office, and free from all others, except: . . . 4. Any tax or special assessment for which a sale of the land has not been had at the date of the certificate of title." None of the lands of the appellants has been sold to satisfy the assessment. The exception would indicate that even though a "tax or special assessment" which had not proceeded to sale be not noted on the last certificate of title in the registrar's office, the registered owner would hold the land subject to such tax or special assessment. But section 94 should be given the effect to which it is entitled when read in connection with the rest of the act. When this is done its provisions are found to be directory only. It is concluded that the filing of the notice of the passage of the resolution ordering the work at the time and in the manner found by the trial court, that is to say, before the recording of the assessment, was a sufficient compliance with the requirements of that section.

The appellants assign numerous specifications of error of the trial court relating to the admissibility and exclusion of evidence. It is urged that the court erred in overruling the objections of appellants to the admission of the assessment in evidence. [17] It was proper to receive the assessment-roll in evidence in order that the court might determine whether the assessments were so arbitrary and discriminatory on the face thereof as to amount to a constructive fraud on the appellants. It was admissible even on the appellants' theory of the case.

[18] Evidence was tendered by the appellants as to the assessed value of certain of their properties and properties in the business district claimed to have been favored, for the declared purpose of proving inequality and discrimination

in the assessments. In so far as such evidence might have a bearing on the question of benefits the determination of the council was conclusive (*Duncan* v. *Ramish*, 142 Cal. 686 [76 Pac. 661]; *Cutting* v. *Vaughn, supra*). In so far as it related to the charge of constructive fraud the conditions shown by the record or coming within judicial knowledge must furnish the basis of interference by the courts (*Spring Street Co.* v. *City of Los Angeles, supra; Larsen* v. *San Francisco*, 182 Cal. 1 [186 Pac. 757]; *Swall* v. *County of Los Angeles*, 42 Cal. App. 758 [184 Pac. 406]). There was no error in sustaining the objections to the proffered evidence.

The other alleged errors have been noted. It is deemed unnecessary to discuss them in detail. No serious objection appears to any of the rulings of the trial court.

The judgment is affirmed.

Richards, J., Waste, J., Lawlor, J., Lennon, J., Seawell, J., and Myers, C. J., concurred.